WALLACE, JUDGE:
This claim arises out of the construction of group camp facilities at Panther State forest, McDowell County, West Virginia. The contract was entered into by claimant Elwin E. Aliff Construction Company, Inc. and respondent Department of Natural Resources on July 11, 1974. The term of the contract was 240 days. The contract completion date was extended to May 28, 1977, by Change Order #7. The actual completion date for the project was September 15, 1977. The parties, by their respective counsel, stipulated that neither the claimant nor the respondent have any of the invoices or itemizations regarding the specific items of damages alleged by the claimant in this claim.
Claimant contends that it performed the following items as extra work for which it should be compensated: Item #2 Extra fill inside and outside buildings, Item #3 extra block and foundation work, Item #4 Removal of stumps, Item #6 Flashing installed under wood band around buildings, Item *7 Filling of beams where lumber cracked, Item *8 Shower stalls which were approved and then rejected, Item #9 Repainting decks and ramps, Item #11 Additional overhead, Item #14 Repair and reflash roof at cabin, Item #15 Adding electrical contractors to protect kitchen equipment, and Item #16 Adding back liquidated damages. Claimant amended the amount of its original claim to $53,920.00 at the hearing.
Claimant contends that the plans for the project did not correlate with the actual contour of the site. The construction site for the project is a long, sloping site. It was necessary for claimant to place fill for the main lodge and the parking lot which was not indicated in the *4 plans and specifications. The fill was necessary to bring the floor levels up to the levels at which the slabs could be poured. Then backfill was placed against the foundations of the buildings. Claimant also alleges that the additional fill includes the fill required for the parking lot.
The respondent contends that the floor elevations of the cabins were adjusted and that although the elevation lines might not be the same, the amount of fill that was used was the same. As the respondent determined that the increases in fill were not substantial increases i the amount of grading performed at the parking lot, the respondent denied claimant additional compensation for the fill and grade work performed on the parking lot.
During construction of the cabins, it was necessary for the walls of the cabins to be compacted as the plans did not allow for backfill. The specification included in the terms of the contract required that the opposite be done, i.e., backfill and then pour the concrete slab. As a result of the specifications, the walls deteriorated. The claimant was then required to patch in and hand fill these areas. This occurred five or six times during construction of the cabins. As a result, extra labor was required. Item #3 is connected with the backfill problem as the breakdown in the foundations of the cabins necessitated additional block, mortar, steel, and labor which constitutes for the amount claimed in Item #3.
Concerning Item #4, claimant contends that it was the responsibility of the respondent to pull the stumps in shaded areas indicated on the plans. As this was not done, the claimant removed the stumps. Claimant alleges extra expense for the removal of the stumps and delay on the project when stumps were not removed in a timely manner.
Respondent agrees that claimant's personnel assisted in the removal of some of the stumps at the project site. However, respondent contends that it removed the majority of the stumps and that at any time its personnel was requested, they removed the stumps as requested.
Item #6 for installation of flashing under the lodge and cabin roofs appears to be indicated on the plans, and, therefore, claimant is not entitled to this item as extra work.
The damages alleged in Item #1 involve extra work performed by claimant in filling cracks in the wood beams placed for the ceilings in the lodge and cabins. Respondent required claimant to fill cracks in the beams in accordance with contract specifications for painting. Claimant stained the beams and contends that stain is not within the specifications. The Court has determined, upon reviewing the specifications, that filling cracks in the beams was unreasonable and a strained interpretation of the specifications.
As to Item #8 relating to the installation of the shower stalls, claimant alleges that shop drawings for the shower stalls were submitted to respondent, approved by the respondent, and the stalls were, in fact, installed by the claimant at the project. However, claimant was then required to remove these shower stalls and replace the same with another set of shower stalls which had to be ordered and then installed. This caused claimant delay in the work being *5 performed and extra work as the new shower stalls had to be installed after removal of the first stalls. Claimant did not receive a credit for the first set of shower stalls from the supplier and was under the impression that respondent would sell the stalls and reimburse the claimant. The claimant has not received any payment for the first set of shower stalls.
Item No. 16 for liquidated damages was charged by the respondent against the claimant for 110 days at $50.00 per day for a total amount of $5,500.00. Claimant alleges that the delays causing the delay in completion of the project were the faulty of the respondent. These delays involved thefts of claimant's materials on the project when the gates to the park were not closed by respondent's personnel; the failure of respondent to remove the stumps in a timely manner; and problems with the approval of range hoods for the kitchens.
Donald Preast, Construction Supervisor for respondent at the time of this construction (from July 21, 1975 through August, 1976), testified that he observed the owner and general manager of claimant corporation, Elwin Aliff, at the construction site approximately five times during the time that he was assigned to the project. He kept a diary of his time at the site. Included in the diary were the number of people who worked on any given day for the duration oft the time during which he was on the project. He testified that there were many good days on which claimant could have worked but did not have personnel on the job. He stated that there were things that claimant’s workmen could have been doing to bring the job to completion at an earlier date. He stressed the fact that this job lacked a superintendent, and the specifications required that a competent superintendent be on the job at all times. In addition, the specifications called for a schedule on the job, and there was no schedule to his knowledge. He explained that a number of items included in the claim were subject to force account procedures. The procedures for force account work are set out in the specifications of the contract. The items for which the claimant is entitled to extra compensation based upon change orders included repainting (Item #9), repairing and reflashing (Item #14), and the electrical contractors (Item #15). He stated that for force account, the contractor furnishes the name, labor, time, date, time slips, wage rate, and invoices for materials. The respondent admits the extra work was done although it has not been provided with invoices for labor and materials charged by claimant for these items and, therefore, has not been paid.
As to Item #11 for additional overhead arising out of delays on the project, the Court has determined that these expenses are too speculative in nature. The Court denies this item.
The Court finds from the evidence that claimant should be paid additional monies for this construction project. While claimant was partially at fault for failing to properly supervise this job and may have failed to follow the force account procedures set forth in the contract, it is unconscionable for the State to receive the benefit of the additional work claimant was required to perform without compensation.
*6 The claimant is entitled to $774.00 for filling the beams, $3,600.00 for the extra shower stalls, $747.83 for the additional electrical work. $2,052.47 for the repair and reflashing of the cabin roof, $599.00 for separating the decks and ramps, and $4,300.00 for extra block and foundation work - for a total award of $12,073.30.
• Award of $12,073.30.