**PCL CONSTRUCTION SERVICES, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 06–144C.

United States Court of Federal Claims.

Oct. 16, 2008.

---

Durwood E. Timmons, Sherman & Howard, L.L.C., Colorado Springs, CO, for the plaintiff. Of counsel, Michael J. Cook, Denver, CO.

Leslie C. Ohta, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With her was Jeanne E. Davidson, Director, Commercial Litigation Branch.

## OPINION

HORN, Judge.

### FINDINGS OF FACT

The above-captioned case concerns a contract between the government and the plaintiff, PCL Construction Services, Inc. (PCL), for the construction of a Visitor's Center and Parking Structure at the Hoover Dam. The United States Department of Interior, Bureau of Reclamation (USBR) awarded contract no. 1–CC–30–09150 to PCL to construct a Visitor Center and Parking Structure at the Hoover Dam.

During the course of this complex project, USBR initiated changes to the contract by

requesting cost proposals from PCL, or directed PCL by unilateral modification to proceed with changes. When this happened, PCL would initiate a "CRX" (Change Request Extra). PCL itself also requested changes to the contract via CRXs sent to USBR. In addition, PCL used CRXs to track changes between PCL and its subcontractors.

Approximately two and one-half years after the government issued a notice to proceed to PCL, plaintiff submitted an uncertified Request for Equitable Adjustment (REA), claiming entitlement to recover $23,229,471.00 and to a schedule extension of 363 days because of delays and disruptions arising from alleged defective contract drawings and specifications, differing site conditions, time required for resolution of Requests for Information (RFI), and time impacts due to contract changes. USBR notified PCL that it had evaluated the REA and requested that PCL participate in a fact-finding session regarding preparation of an as-built schedule in order to agree upon responsibility for critical delays to the project. PCL interpreted this as a denial of the REA in its entirety.

The contracting officer stated that an assessment of liquidated damages would be made against PCL when "responsibilities for time associated with delays are made." The contracting officer also stated that liquidated damages would then be assessed against PCL for those delays which are "not found to be the responsibility of the Government. . . ."

The contracting officer issued PCL a Certificate of Substantial Completion certifying that the contract was substantially complete, and notified PCL that the project was considered to be substantially complete except for the results of a joint inspection, and the "deficient items noted and listed during the [previous] joint inspections." The USBR began using the Visitor Center and Parking Structure and opened the facilities for tourism.

Despite not having completed all of the previously listed deficiencies, PCL requested the final acceptance inspection to be held. PCL's request was contrary to the terms of the contract, which required PCL to request final acceptance only when all contract work was considered to be complete. Therefore, USBR rejected PCL's request. PCL outlined a procedure to address the remaining deficiency items, and requested a consolidated deficiency listing. USBR provided PCL with a consolidated deficiency listing and concurred with PCL's suggested procedure for resolving the deficiency items. USBR also reminded PCL of its obligation to provide a written certification that the contract work had been completed in accordance with contract section 01700 1.10.A. PCL, however, never provided the required written certification, although PCL and some of its subcontractors remained on site performing some of the work under the contract. At trial, government witnesses testified that most of the items on the deficiency lists remained outstanding to the day of the trial.

On July 25, 1995, PCL filed a breach of contract claim with USBR's contracting officer in the amount of $31,040,071.00. At approximately the same time, USBR notified PCL that it was retaining money from PCL pursuant to USBR's interpretation of the contract: "[C]ontinued withholding of funds is necessary for the protection of the Government's interest in accrued liquidated damages, outstanding required submittals, and credits due the Government for changes and/or reductions in work." PCL requested release of the retainage, but the USBR denied the request. The contracting officer then issued her final decision denying the breach of contract claim in its entirety.

PCL also submitted a certified claim in the amount of $1,351,838.00 for monies retained by USBR. PCL notified USBR that it had performed the contract and was entitled to the retained money. In addition, PCL stated it would perform no additional work as it believed that the work requested was outside the scope of the contract and USBR's withholding of funds was contrary to contract requirements. PCL's letter of November 22, 1995 stated: "PCL will therefore perform no additional work related to the contract; and, PCL is advising its subcontractors that any work performed for the Bureau on this contract will be at their own risk."

The contracting officer responded to PCL's election to stop work and denied PCL's claim for monies withheld in its entirety. The USBR took exception to PCL's statement that work under the contract was complete and interpreted PCL's letter as an "express and unequivocal repudiation" of PCL's remaining contractual obligations. In addition, USBR informed PCL that a failure by PCL to respond within ten days of the letter would result in a demand upon sureties to complete any remaining work.

Thereafter, the contracting officer notified PCL that the government was terminating the contract for default based on PCL's alleged breach of contract. On March 26, 1996, the contracting officer also notified PCL of an assessment of liquidated damages in the amount of $1,285,000.00 due to USBR's decision that PCL had not "provided support demonstrating entitlement to delays." The liquidated damages letter did not assign responsibility for delay to PCL or to USBR. The letter stated that the amount was a "preliminary assessment" and that "[i]f it is found at a future date that PCL is entitled to excusable delays the above amount will be offset accordingly."

PCL filed two complaints in this court (Case Nos. 95–666C and 96–442C), arising from the alleged actions of the USBR. The first complaint (referred to below as the breach complaint) was amended following discovery, to assert breach of contract premised upon fraud in the inducement and misrepresentation by the government (Counts I, II and IV), breach of contract premised upon superior knowledge by the government (Counts III and VI), breach of contract arising from a breach of warranty by the government (Count V), breach of contract stemming from hindrance and delay by the government (Count VII), cardinal change (Count VIII), illegal contract (Count IX), and Anti–Deficiency Act violation (Count X). After the amended complaint in Case No. 95–666C was filed, PCL filed a second complaint on July 23, 1996, which was assigned Case No. 96–442C. The complaint in the second action was premised upon (1) The contracting officer's final decision denying PCL's certified claim for $1,351,838.00 seeking monies re-

tained by USBR, (2) the contracting officer's termination of PCL for default based upon an alleged breach of the contract by PCL, and (3) the contracting officer's assessment of liquidated damages against PCL in the amount of $1,285,800.00.

In its first *PCL* decision, this court granted summary judgment in favor of the government on Count X of Case No. 95–666C, PCL's claim that alleged the contract was illegal due to violation of the Anti–Deficiency Act, 31 U.S.C. §§ 1341, 1342, which precludes the award of government contracts in excess of, or in advance of, appropriations. *See PCL Constr. Servs., Inc. v. United States (PCL I),* 41 Fed.Cl. 242, 249–50, 264 (1998). Trial was held on the remaining claims. The facts of the case, and the problems encountered by the parties during construction of the project, were fully detailed in this court's lengthy, September 20, 2000 post-trial opinion. The trial opinion found that the government had not breached its contract with PCL. *See PCL Constr. Servs., Inc. v. United States (PCL II),* 47 Fed.Cl. 745, 753–82, 812 (2000). A third decision was issued on August 28, 2002, in which the court determined that PCL was entitled to the release of liquidated damages held by the USBR. *See PCL Constr. Servs., Inc. v. United States (PCL III),* 53 Fed.Cl. 479, 493 (2002).

PCL appealed the trial court's decisions on breach of contract and Anti–Deficiency Act violations to the United States Court of Appeals for the Federal Circuit. The Federal Circuit issued its decision affirming the trial court's two rulings. *See PCL Constr. Servs., Inc. v. United States (PCL IV),* 96 Fed.Appx. 672, 676–78 (Fed.Cir.2004) (unpub.). The facts found in *PCL I, II, III* and *IV* are incorporated by reference into this opinion.

Following the Federal Circuit's decision, PCL filed two more claims with the USBR contracting officer. PCL submitted a certified claim for $2,399,483.00, seeking additional direct costs under remedy-granting provisions of the contract, for changes in the scope of the contract, called "CRX" claims, an acronym for Change Request Extra. PCL also submitted a certified claim for $19,669,050.00 for costs stemming from alleged disruptions and delays to PCL's performance (hereafter,

Delay and Disruption claim). Both types of claims were denied by the contracting officer in separate final decisions on the ground that the claims were barred by the doctrine of *res judicata*, based on this court's earlier decisions. PCL then filed a complaint in this court, asserting five grounds for recovery: 1) a Type I Differing Site Condition clause claim; 2) a Type II Differing Site Condition clause claim; 3) a Changes clause claim; 4) a Suspension of Work clause claim; and 5) a constructive changes claim.

## DISCUSSION

The government filed a motion for summary judgment on PCL's latest claims in this court, contending that plaintiff's current claims are barred by the doctrine of *res judicata*, as a result of the trial and the earlier decisions issued by this court in Case Nos. 95–666C and 96–442C. Rule 56 of the Rules of the Court of Federal Claims (RCFC) is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ.P.) and is similar both in language and effect. Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Moden v. United States,* 404 F.3d 1335, 1342 (Fed.Cir.), *reh'g and reh'g en banc denied* (2005); *Am. Pelagic Fishing Co., L.P. v. United States,* 379 F.3d 1363, 1370–71 (Fed.Cir.2004), *cert. denied,* 545 U.S. 1139, 125 S.Ct. 2963, 162 L.Ed.2d 887 (2005); *Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d 1253, 1257 (Fed.Cir.2001); *Avenal v. United States,* 100 F.3d 933, 936 (Fed.Cir.1996), *reh'g denied* (Fed.Cir.1997); *Creppel v. United States,* 41 F.3d 627, 630–31 (Fed.Cir.1994); *Atwood–Leisman v. United States,* 72 Fed.Cl. 142, 147 (2006). A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 247–48, 106 S.Ct. 2505; *see also Monon Corp. v. Stoughton Trailers, Inc.,* 239 F.3d at 1257; *Curtis v. United States,* 144 Ct.Cl. 194, 199, 168 F.Supp. 213, 216 (1958), *cert. denied,* 361 U.S. 843, 80 S.Ct. 94, 4 L.Ed.2d 81 (1959), *reh'g denied,* 361 U.S. 941, 80 S.Ct. 375, 4 L.Ed.2d 361 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Ford Motor Co. v. United States,* 157 F.3d 849, 854 (Fed.Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); *Johnson v. United States,* 49 Fed.Cl. 648, 651 (2001), *aff'd,* 52 Fed. Appx. 507 (Fed.Cir.2002), *published at* 317 F.3d 1331 (Fed.Cir.2003); *Becho, Inc. v. United States,* 47 Fed.Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. 2505; *Jay v. Sec'y of Dep't of Health and Human Servs.,* 998 F.2d 979, 982 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (Fed.Cir.1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rothe Dev. Corp. v. U.S. Dep't of Defense,* 262 F.3d 1306, 1316 (Fed.Cir.2001); *Hall v. Aqua Queen Mfg., Inc.,* 93 F.3d 1548, 1553 n. 3 (Fed.Cir.1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Summary judgment:

> [S]aves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless.

"Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result. *Dehne v. United States*, 23 Cl.Ct. 606, 614–15 (1991) (citing *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626 (Fed.Cir.1984)), vacated on other grounds, 970 F.2d 890 (Fed.Cir.1992); *see also U.S. Steel Corp. v. Vasco Metals Corp.*, 55 C.C.P.A. 1141, 394 F.2d 1009, 1011 (1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505; *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 971 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2001), *cert. denied*, 534 U.S. 1109, 122 S.Ct. 913, 151 L.Ed.2d 879 (2002); *Gen. Elec. Co. v. Nintendo Co.*, 179 F.3d 1350, 1353 (Fed. Cir.1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587–88, 106 S.Ct. 1348; *Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co.*, 272 F.3d 1365, 1369 (Fed.Cir.2001), *reh'g and reh'g en banc denied*, 293 F.3d 1364 (Fed.Cir.2002), *cert. denied*, 539 U.S. 957, 123 S.Ct. 2637, 156 L.Ed.2d 655 (2003); *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d at 1257; *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (Fed.Cir.1998); *see also Am. Pelagic Co. v. United States*, 379 F.3d at 1371 (citing *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1345–46 (Fed.Cir. 2000)).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Riley & Ephriam Constr. Co. v. United States*, 408 F.3d 1369, 1371 (Fed.Cir.2005); *Crown Operations Int'l Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1377 (Fed.Cir.), *reh'g denied* (Fed.Cir.2002); *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 741 (Fed.Cir.) (quoting *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575 (Fed.Cir.1994)), *reh'g denied and en banc suggestion declined* (Fed.Cir.1997); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1569 (Fed.Cir.1997). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. 2548; *Am. Airlines, Inc. v. United States*, 204 F.3d 1103, 1108 (Fed.Cir.2000); *see also Long Island Sav. Bank, FSB v. United States*, 503 F.3d 1234, 1244 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2007), *cert. denied*, No. 07–1234, 2008 WL 857022 (U.S. Oct.6, 2008); *Schoell v. Regal Marine Indus., Inc.*, 247 F.3d 1202, 1207 (Fed.Cir.2001). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." *Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1369 (Fed.Cir.2006).

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)); *see also Chevron USA, Inc. v. Cayetano*, 224 F.3d 1030, 1037 n. 5 (9th Cir.2000), *cert. denied*, 532 U.S. 942, 121 S.Ct. 1403, 149 L.Ed.2d 346 (2001); *St. Christopher Assocs., L.P. v. United States*, 75 Fed.Cl. 1, 8 (2006), *aff'd*, 511 F.3d 1376 (Fed. Cir.2008). "[S]imply because both parties

moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 593 (6th Cir.2001); *Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed.Cir.1997). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other necessarily is justified. *B.F. Goodrich Co. v. United States Filter Corp.*, 245 F.3d at 593; *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir.2000); *Allstate Ins. Co. v. Occidental Int'l, Inc.*, 140 F.3d 1, 2 (1st Cir. 1998); *Reading & Bates Corp. v. United States*, 40 Fed.Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration or otherwise stated in favor of the non-moving party. *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1322 (Fed.Cir.2001); *see also Gart v. Logitech, Inc.*, 254 F.3d 1334, 1338–39 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir. 2001), *cert. denied*, 534 U.S. 1114, 122 S.Ct. 921, 151 L.Ed.2d 886 (2002); *Telenor Satellite Servs. v. United States*, 71 Fed.Cl. 114, 119 (2006).

*Res Judicata*

The United States Supreme Court has summarized the doctrines of res *judicata* (claim preclusion) and collateral estoppel (issue preclusion) as follows:

> A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction ... cannot be disputed in a subsequent suit between the same parties or their privies...." *Southern Pacific R. Co. v. United States*, 168 U.S. 1, 48–49, 18 S.Ct. 18, 27, 42 L.Ed. 355 (1897). Under res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876); *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955); 1 B J. Moore, Federal Practice ¶ 0.405[1], pp. 621–624 (2d ed.1974) (hereinafter 1B Moore); Restatement (Second) of Judgments § 47 (Tent. Draft No. 1, Mar. 28, 1973) (merger); id., § 48(bar). Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979); Scott, Collateral Estoppel by Judgment, 56 Harv. L.Rev. 1, 2–3 (1942); Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, Apr. 15, 1977) (issue preclusion). Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions. *Southern Pacific R. Co., supra*, 168 U.S., at 49, 18 S.Ct., at 27; *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana v. United States*, 440 U.S. 147, 153–54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) (footnote omitted; omissions in original).

In a 1981 opinion, the Supreme Court noted: "There is little to be added to the doctrine of res judicata as developed in the case law of this Court. A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) (citing *Comm'r v. Sunnen*, 333

U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948) and *Cromwell v. County of Sac,* 94 U.S. 351, 352–53, 24 L.Ed. 195 (1876)); *see also Stearn v. Dep't of the Navy,* 280 F.3d 1376, 1380 (Fed.Cir.2002). "[I]f the claimant, before filing its first suit, is in possession of all the facts on which its second suit is based, the splitting of the claims into multiple suits is fatal to maintenance of the later-filed action." *Alyeska Pipeline Serv. Co. v. United States,* 231 Ct.Cl. 540, 546, 688 F.2d 765, 769 (1982) (quoting *Everett Plywood Corp. v. United States,* 206 Ct.Cl. 244, 252, 512 F.2d 1082, 1087 (1975)), *cert. denied,* 461 U.S. 943, 103 S.Ct. 2120, 77 L.Ed.2d 1301 (1983). By affording a claimant only one opportunity to obtain redress, the doctrine conserves judicial resources, fosters reliance upon judicial decisions, and protects litigants from vexatious and needless litigation. *Montana v. United States,* 440 U.S. at 153–54, 99 S.Ct. 970.

The United States Court of Appeals for the Federal Circuit, following the precedent set by the Supreme Court, also has addressed issue preclusion and claim preclusion, writing that, "unlike issue preclusion, which only bars matters actually litigated in a prior proceeding, claim preclusion forecloses matters that, although never litigated or even raised, could have been advanced in an earlier suit." *Carson v. Dep't of Energy,* 398 F.3d 1369, 1375 n. 8 (Fed.Cir.), *reh'g denied* (Fed.Cir.2005). The Federal Circuit, in further discussing the doctrine of *res judicata,* or claim preclusion, specified that "res judicata applies if (1) the prior decision was rendered by a forum with competent jurisdiction; (2) the prior decision was a final decision on the merits; and (3) the same cause of action and the same parties or their privies were involved in both cases." *Id.* at 1375; *see also Jet, Inc. v. Sewage Aeration Sys.,* 223 F.3d 1360, 1362 (Fed.Cir.), *reh'g and reh'g en banc denied* (Fed.Cir.2000); *Int'l Nutrition Co. v. Horphag Research, Ltd.,* 220 F.3d 1325, 1328 (Fed.Cir.2000) (defining the third element to include "the same claims that were raised, or could have been raised, in the prior action"); *Amgen, Inc. v. Genetics Inst., Inc.,* 98 F.3d 1328, 1331 (Fed.Cir.1996), *reh'g denied and en banc suggestion declined* (Fed.Cir.1997); *Schickler v. United States,*

54 Fed.Cl. 264, 270 (2002) (citing *Blonder–Tongue Labs., Inc. v. University of Ill. Found.,* 402 U.S. 313, 323–24, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)), *appeal dismissed,* 70 Fed.Appx. 584 (Fed.Cir.2003). Further clarifying the third requirement in terms of claim preclusion, the Federal Circuit wrote:

> A subsequent suit is barred if it arises out of the same subject matter as a previous suit and which, "through the exercise of diligence, could have been litigated in a prior suit." [Restatement (Second) of Judgments § 24 (1982).] What constitutes the subject matter of a suit depends on the factual basis of the complaint, and any cause of action that arises out of the same facts should be litigated in the same action. *See id.* [*Barr v. Resolution Trust Corp.,* 837 S.W.2d] at 630 [(Tex.1992)]; *see also Flores v. Edinburg Consol. Independent School Dist.,* 741 F.2d 773, 777 (5th Cir. 1984), *reh'g denied,* 747 F.2d 1465 (1984) (table).

*United Tech. Corp. v. Chromalloy Gas Turbine Corp.,* 189 F.3d 1338, 1344 (Fed.Cir.), *reh'g denied and en banc suggestion declined* (Fed.Cir.1999).

The Federal Circuit recently summarized the basic rules on *res judicata* in the *Phillips/May Corporation* case, as follows:

> The doctrine of res judicata involves the related concepts of claim preclusion and issue preclusion. The Court of Federal Claims here relied on claim preclusion, which refers to "the effect of foreclosing any litigation of matters that never have been litigated, because of a determination that they should have been advanced in an earlier suit." 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4402 (2d ed.2002). As the Supreme Court has explained, "when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy … not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' " *Nevada v. United States,* 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983)

(quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)). Claim preclusion applies when "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed.Cir.2003).

*Phillips/May Corp. v. United States*, 524 F.3d 1264, 1267–68 (Fed.Cir.), *reh'g denied* (Fed.Cir.2008) (omission in original).

 PCL's claims in the current lawsuit arise from its contract with the Bureau of Reclamation to construct a Visitor Center and Parking Structure at the Hoover Dam, the same contract which gave rise to PCL's claims in its breach complaint, previously tried and decided, *PCL II*, 47 Fed.Cl. 745. Because the parties are identical in the earlier case and in this present case before the court, and because the first suit proceeded to a final judgment on the merits, the dispositive issue for purposes of *res judicata* before this court is whether the claims in the most recent complaint are based on the "same set of transactional facts as the first," and whether claim splitting should be allowed. *Phillips/May Corp. v. United States*, 524 F.3d at 1268 (quoting *Ammex, Inc. v. United States*, 334 F.3d at 1055). The Federal Circuit has provided a recent, helpful treatise on this issue in its *Phillips/May* opinion, quoted extensively below:

> In general, a party will be permitted to split claims if, for example, the two claims involve different sets of transactional facts. *See Fla. Power & Light [Co. v. United States]*, 198 F.3d [1358,] 1360–61 [Fed.Cir. 1999] (finding res judicata inapplicable when "the two sets of claims involve[d] not only different time periods, but also different agencies with different contracting officers and different statutory mandates re-

garding pricing policy"). According to the Restatement, the question of whether two claims involve the same set of transactional facts is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Restatement (Second) Judgments* § 24(2) (1982). This rule has been refined in the contracts context, so that claims under a single contract generally must be brought together. *See* [18 Charles Alan] Wright, [Arthur R.] Miller & [Edward H.] Cooper, *[Federal Practice and Procedure]* § 4408 [ (2d ed. 2002) ] ("Contract cases often can be resolved by a simple rule that the first suit must claim every breach that has then occurred."). Our predecessor court recognized this rule in *Container Transport International, Inc. v. United States*, 199 Ct.Cl. 713, 468 F.2d 926 (Ct.Cl.1972), concluding that res judicata would bar a contact claim for services performed after shipped goods were tendered for delivery, when an earlier action had determined the right to additional compensation for the actual shipment of the goods. A single contract covered both the shipment and the post-shipment services. The court stated that, "normally, a single claim . . . arises out of each single, indivisible contract," and held that res judicata should bar the second claim because "[t]here was no obstacle to putting both aspects of the demand in one suit, and that would be the normal expectation for a claimant [in the circumstances]." *Id.* at 928–29 [brackets in original]; [1] *cf. Case, Inc. v. United States*, 88 F.3d 1004, 1012 (Fed.Cir.1996) ("[T]he claim in *Case II* was barred by the doctrine of *res judicata* because it was subject to the same accord

---

1. At this point in the *Phillips/May* opinion, a footnote referencing the case of *Container Transport International, Inc. v. United States*, 199 Ct. Cl. 713, 468 F.2d 926 (1972), stated verbatim:

 The court did not bar the claim, however, because its holding conflicted with existing precedent and the court found that "[p]rospective overruling" of the earlier case was appropriate because "a retroactive application of the

new rule would be inequitable, producing injustice or undue hardship." *Container*, 468 F.2d at 930. Such an approach is no longer appropriate. *See Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 89–90, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993).

*Phillips/May Corp. v. United States*, 524 F.3d at 1272 n. 4.

and satisfaction ... that was fully adjudicated in *Case I.*"). While *Container* was decided before the enactment of the CDA in 1978, as discussed above, we see nothing in the CDA that was designed to change the rule adopted in that case.

*Phillips/May Corp. v. United States,* 524 F.3d at 1271–72 (emphasis added; omission in original; brackets added); *see also Alyeska Pipeline Serv. Co. v. United States,* 231 Ct.Cl. at 545–46, 688 F.2d at 769.

 The Federal Circuit in *Phillips/May* further noted that the presumption that claims arising out of the same contract constitute the same claim for *res judicata* purposes, "may be overcome by showing that the claims are unrelated." *Phillips/May Corp. v. United States,* 524 F.3d at 1272. In support of this proposition, the Federal Circuit quoted the Wright, Miller and Cooper treatise: "In some circumstances ... a different rule may be applied on the excuse that the several obligations created by a single contract are so far separable or divisible that each constitutes a separate claim or cause of action." *Phillips/May Corp. v. United States,* 524 F.3d at 1272 (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4409 (2d ed.2002) (omission in original)). The Federal Circuit also quoted its earlier *Placeway* opinion: "if the claims ... will necessitate a focus on a different or unrelated set of operative facts as to each claim, then separate claims [will] exist...." *Phillips/May Corp. v. United States,* 524 F.3d at 1272 (quoting *Placeway Constr. Corp. v. United States,* 920 F.2d 903, 907 (Fed.Cir.1990) (omissions in original)). Under this test, the Federal Circuit in *Phillips/May* found that there was "extensive factual overlap" between the earlier claims litigated and the subsequent claim presented by the Phillips/May Corporation to the Court of Federal Claims, and concluded that "there is no justification here for departing from the general rule that all claims arising out of the same contract constitute the same claim for purposes of res judicata." *Phillips/May Corp. v. United States,* 524 F.3d at 1273. The claim before the Federal Circuit in *Phillips/May* was barred under the doctrine of *res judicata.* *Id.* The same question arises in the present case—whether the general rule obtains—that all claims arising out of the single PCL–Bureau of Reclamation construction contract represent the same claim for purposes of the doctrine of *res judicata,* and should have been brought together in the initial litigation.

Plaintiff contends that its current claims before the court are distinct from its earlier, litigated claims, and do not arise out of the same set of transactional facts. Plaintiff attempts to distinguish between claims associated with the breach of contract action previously litigated, and the current complaint which plaintiff bases on the remedy-granting provisions of the PCL–Bureau of Reclamation contract. The earlier breach complaint relied on theories of fraud in the inducement (Counts I and II), superior knowledge regarding design (Count III), misrepresentation (Count IV), breach of warranty regarding accuracy of drawings and specifications (Count V), superior knowledge regarding the design agent's performance (Count VI), breach of duty not to hinder or delay (Count VII), cardinal change (Count VIII), and illegal contract (Counts IX and X). PCL's latest complaint, identified by the parties as the delay complaint, relies on theories based on the Differing Site Conditions clause of the contract (the first and second claims in PCL's more recent complaint), the Changes clause (the third claim in PCL's more recent complaint), the constructive changes doctrine (the fifth claim in PCL's more complaint) and the Suspension of Work clause (the fourth claim in PCL's more recent complaint).

In the earlier, completed litigation for breach of contract, during closing argument, PCL's former attorney discussed with the court the possibility of the court basing its findings after the trial on remedies other than breach of contract—alternative remedies invoking the remedy-granting clauses of the PCL contract—such as the clauses PCL relies on in its present complaint, before this court, as follows:

The Court: As a practical matter, there are alternative solutions.

Plaintiff's Counsel: That's correct Your Honor. I am loath to get into a discussion

about REAs [Requests for Equitable Adjustment] change clauses, because I think it tends to undermine—

The Court: And I'm not going to force you to do it. Just answer one question.

Plaintiff's Counsel: I'll answer all the questions.

The Court: Answer one question. I won't force you to get into a discussion of it, because it obviously is contrary to your fundamental theory of the case, although you have at some point said you did, in the alternative, plead sufficient basis for alternative remedies.

Plaintiff's Counsel: We did, Your Honor. Let me stop on that point for just a moment. Virtually all the cases cited, that follow Spearin in 1918 *[United States v. Spearin, 248 U.S. 132, 54 Ct.Cl. 187, 39 S.Ct. 59, 63 L.Ed. 166 (1918)]*, the remedies that have been afforded have been, how shall I say, less than breach of contract remedies. Even the Courts. [sic] But the Courts and the boards have handled them other then [sic] by assuming there is, as Your Honor has used the term, a total breach of contract.

The Court: Ye[s], but—

Plaintiff's Counsel: If I were to propose a complaint citing ten counts of breach of contract, that would not mean that the Court was ipse dixit precluded from making findings and determinations that did not invoke breach of contract as the means of the remedy.

\* \* \*

Your Honor, as I say, I don't want to say anything that encourages other than a breach of contract result here.

The Court: That's fine.

Plaintiff's Counsel: But, in virtually every count, certainly in counts like cardinal change, there are alternative grounds that are available to the Court.... And I don't know whether the Court wants to do that here. I suggest to the Court that the evidence here demonstrates very clearly breach of contract, and that result is warranted. But, there's no reason why the Court cannot send the parties off having

made fact-findings to deal with damages, based on the facts as found by the Court. I don't think there's any limitation, presentation of the contracting officer, certification, or anything else that would preclude the Court from doing that.

Similarly, in plaintiff's post-trial brief filed in the breach of contract case, PCL's former attorney stated:

> Of course, this Court could conclude that the government did not breach the Contract, cardinally change the Contract, or violate FAR Part 16 [titled "Types of Contracts"]. In light of the government's pre-award knowledge, misrepresentations, and the volume and significance of the drawing defects, however, PCL believes that a finding of breach of contract or violation of FAR Part 16 is the finding most in accordance with what the law requires and what businesses contracting with the government have a right to expect from the government acting in its contractual capacity. In any event, if the Court were to find no breach, cardinal change, or violation of FAR Part 16, the Court, relying upon the facts tried in this case to date, could conclude that PCL is entitled to an equitable adjustment for constructive changes under any or all of the following clauses in the Contract due to delays, disruptions, accelerations, and changes in specifications: the Changes clause; the Differing Site Conditions clause; or the Suspension of Work clause. *The jurisdiction of the Court to reach such a finding is clear because the operative factors for such a conclusion would be the facts tried before this Court.* Should the Court find PCL entitlement under a Contract clause, the remaining issues after appropriate appeals have been decided would be the monetary value of PCL's recovery. In other words, the remaining issues in this case would be similar, but not identical, to the issues remaining after a finding of a breach of contract.

(emphasis added). The potential, remedy-granting, contract clauses cited above by PCL in its post-trial brief in the breach case as alternatives to its primary, breach of contract theory—Differing Site Conditions, Changes, and Suspension of Work—are the

basis for PCL's more recent complaint before the court and raise the issue of *res judicata* addressed in this opinion.

The lengthy, approximately 50 day trial, which encompassed numerous fact and expert witnesses as well as voluminous trial exhibits, covered virtually every aspect of the PCL construction project at the Hoover Dam. Moreover, there are similarities between the language of the earlier breach complaint with language in the current delay complaint. For example, the breach complaint alleged that: "During construction, PCL encountered site conditions which varied substantially from those depicted on the drawings." Similarly, the present delay complaint alleges that: "PCL encountered materially different conditions at numerous locations throughout the Contract work site," and "USBR's pre-award representations to PCL differed materially from those actually encountered during performance of the Contract." Also, PCL's breach complaint alleged that: "The government took months and, in many instances, over one year to resolve Contract drawing and specification defects, precluding the timely and orderly performance of work." Similarly, PCL's current delay complaint alleges that: "USBR directly caused suspensions and delays to PCL's and it [sic] Subcontractors' work by its action or inactions, including, but not limited to: ... [d]elays due to failure to furnish adequate Drawings and Specifications and to timely correct their deficiencies[.]" PCL's breach complaint also alleged that: "On average, the government took 62 days to respond to RFIs [Requests for Information], precluding proper work sequencing, causing work stoppages and related impacts and breaching the Contract." Similarly, PCL's more recent delay complaint alleges that "USBR's unreasonable delays in providing direction or responding to RFI caused PCL and its Subcontractors to incur unanticipated costs due to delays, disruptions, and/or impacts."

PCL's present delay complaint focuses on changes to the contract in the form of Change Request Extras (CRXs), and delay and disruption claims. As for unreimbursed changes, PCL's fifth claim for relief in the present complaint brings a constructive change claim before the court, based on PCL-proposed CRXs which were denied by the Bureau of Reclamation, and also alleges that the "actions or omissions of the Bureau delayed and disrupted PCL's performance." This court addressed CRXs, which were introduced as exhibits at the trial, in its earlier opinion following the lengthy trial:

> PCL suggests that the number of CRXs that were generated by PCL during the project demonstrates a "severely defective" contract package. During the course of this complex project, USBR initiated changes to the contract by requesting cost proposals from PCL, or directed PCL by unilateral modification to proceed with changes. When this happened, PCL would initiate a "CRX" ("change request extra"), which ascended in number throughout the job. PCL itself also requested changes to the contract via CRXs sent to USBR. PCL even used CRXs to track changes between PCL and its subcontractors.

> PCL maintained a CRX log during the performance of the construction work.

> \* \* \*

> In addition, PCL alleges that "the USBR took an unreasonably long time to issue Contract modifications after receiving CRX proposals from PCL." ... It should be noted that during the course of trial, the court often found that a delay ensued following any change by either party and was caused by both USBR and PCL at various times.

> \* \* \*

> Although PCL's allegations of major impacts and job perturbations alleged by PCL were not well supported or corroborated in the record before the court, the task was complicated in part by the complex paperwork trail generated in the CRX process.

> \* \* \*

> Finally, although there are a number of unresolved change orders for which USBR recognizes contractual liability, those costs are offset by provisional payment already made by USBR. USBR issued a number of

modifications that gave PCL provisional payments, estimated by USBR, for completed work and subject to PCL's later substantiation of its costs via a cost proposal, which has never occurred.[2] Ultimately, even if PCL disagrees that it has already been paid more than PCL is owed for unresolved CRXs, PCL has never submitted a contractual claim seeking payment for unresolved CRXs.

*PCL II,* 47 Fed.Cl. at 776–77. As suggested by the detail in this example quoted from the court's earlier opinion, the multitude of CRXs were exhibits admitted into evidence during the trial of PCL's initial claims. The court in its earlier opinion on PCL's breach claims addressed CRXs, suggesting that, in the earlier lawsuit, PCL could have included, but chose not to, a "contractual claim seeking payment for unresolved CRXs." *PCL II,* 47 Fed.Cl. at 777.

With respect to PCL's more recent, present delay complaint, the first count contains a Differing Site Conditions, Type I claim in which PCL contends that: "USBR directly caused delays by its actions or inactions, including, but not limited to, material delays in responding to the differing site conditions." The second count of PCL's more recent, delay complaint also contains a Differing Site Conditions, Type II claim, which states that: "USBR directly caused delays by its actions or inactions, including, but not limited to, delays in responding to PCL's notice of differing site conditions." PCL's earlier breach claim to the contracting officer, which led to the breach complaint in this court, alleged, for example, that redesigns for a differing site condition relating to the ring beam for elevator shaft A took approximately a year to complete. The original breach claim to the contracting officer also asserted that PCL "encountered differing site conditions at virtually every critical excavation location," specifically mentioning the ring

beam, backslope, level 3A transition, and pedestrian ramp, and that "[r]esolution of these changed conditions took repeated redesigns over the court of more than a year...." Moreover, PCL cited as examples of differing site conditions those associated not only with the ring beam, but also with the backslope and east slope, Level 3A transition, the entire west side of the structure, and the pedestrian ramp at the east side.

The third count in the more recent, present delay complaint, in addition to claims for changes to the contract under the Changes clause, asserts that the government caused delays and disruptions because the changes "disrupted PCL's and its Subcontractors' work by requiring out of sequence work, which resulted in unproductive and inefficient work," and materially increased "the time required to perform the original Contract work and changed work...." PCL made similar claims in its earlier breach complaint, under Count VII, which charged breach of the duty not to hinder or delay, and alleged that "[u]nauthorized government employees routinely attempted to change Contract requirements which delayed the progress of work," that "[t]he government also failed to authorize timely Contract modifications," and that "[t]he lack of timely modifications prevented PCL from scheduling its work and that of its subcontractors, delaying the progress of work and precluding schedule updates." PCL also alleged in the earlier breach complaint that "[t]he government took months and, in many instances, over one year to resolve Contract drawing and specification defects, precluding the timely and orderly performance of work."

The fourth claim for relief in the more recent, present delay complaint asserts under the Suspension of Work Clause that the USBR "directly caused suspensions and delays to PCL's and its Subcontractors' work by its actions or inactions...." PCL specifi-

---

**2.** At this point, a footnote in the court's earlier opinion states:

PCL was paid a total of $846,000.00 in provisional payments for Modifications 21, 24, 44, 52, 72, and 81. PCL also alleges that: "In other instances, PCL has *never* received a Contract modification for revised work. For example, PCL performed $179,440.00 in addi-

tional work for CRX 133 for the revised level 3A transition, but has not received a Contract modification for this work." (emphasis in original). This allegation is problematic because PCL did, in fact, receive $120,000.00 in provisional payments for CRX 133 in Modification 81.

*PCL II,* 47 Fed.Cl. at 777 n. 32.

cally cites to: "a. Delays due to failure to furnish adequate Drawings and Specifications and to timely correct their deficiencies; b. Delays in providing direction; c. Delays in responding to requests for clarification or information; d. Delays in responding to differing site conditions; e. Delays in approving Submittals; f. Delays due to unreasonable rejection of Submittals; and g. Delays in timely preparing and issuing Change Orders and/or Modifications." These issues were previously raised in PCL's breach case. For example, in its breach complaint, PCL's breach of duty not to hinder or delay claim included allegations of defects in the drawings and specifications which took the government months to resolve, "unreasonable interpretations of Contract requirements that substantially increased PCL's work and delayed the progress of work," government "fail[ure] to authorize time Contract modifications," and government "fail[ure] to staff adequately the project, causing delays in administration of the Contract which delayed the progress of work. . . ."

Project problem areas included by PCL in the recent delay claim to the contracting officer (and denied by the contracting officer), such as delays associated with the backslope, ring beam, dragtie, pedestrian ramp, vehicle ramp, and level 3A footings, also were identified as problem areas by PCL in PCL's earlier breach of contract action, including, for example, backslope, ring beam, drag tie, pedestrian ramp, vehicle ramp and level 3A footings.

The record reflects that, with respect to delay and disruption claims, there is factual overlap with PCL's present claims in the breach complaint addressed by this court following trial. In particular, Count VII of PCL's earlier complaint was a breach of contract based on the government's "breach of duty not to hinder or delay." The concept of government-caused delay is a thread throughout the supporting paragraphs of Count VII of PCL's earlier breach complaint. Plaintiff alleged in Count VII that:

¶ 287. The law imposes a legal duty upon the government not to hinder or delay a contractor in the performance of work.

\* \* \*

¶ 289. The government had an obligation to resolve the drawing and specification defects in a reasonable time so as not to hinder or delay the progress of work.

\* \* \*

¶ 291. The government also made unreasonable interpretations of Contract requirements that substantially increased PCL's work and delayed the progress of work.

¶ 292. The government also failed to authorize timely Contract modifications and resulting payments to PCL. The lack of timely modifications prevented PCL from scheduling its work and that of its subcontractors, delaying the progress of work and precluding schedule updates.

¶ 293. The government also failed to staff adequately the project, causing delays in administration of the Contract which delayed the progress of work and causing PCL to perform efforts not contractually required in an attempt to mitigate the effects of the government's lack of adequate staffing.

¶ 294. Unauthorized government employees routinely attempted to change Contract requirements which delayed the progress of work.

¶ 295. The CO [contracting officer] has acknowledged that the government is responsible for the majority of the delays on the project. The CO stated in her final decision:

the Bureau is not completely responsible for hindrance of the progress of the work as alleged in the Claim document.

¶ 296. The government's failure to administer properly the Contract unreasonably and materially hindered and delayed PCL's performance, constituting a breach of the Contract.

Furthermore, delay, in the context of Count VII of the breach complaint, was addressed in the court's earlier opinion:

PCL claims that USBR is responsible for all of PCL's project delay, or the approximately twenty-three month period that represents the difference between the

original contract completion date and the date of substantial completion. In short, PCL's hindrance/delay claim is presented as a total cost claim.

\* \* \*

PCL has never submitted a detailed delay/impact claim to the court. PCL has argued that a delay analysis of this project is either unnecessary, impossible, or not relevant, but that the government caused delays are part of their claims of "severely defective" drawings, cardinal change, hindrance, and breach of contract.

\* \* \*

PCL alleges a breach of contract claim and not a delay claim. Although breach of contract claims and delay claims are distinct, the type of proof required to establish either claim based upon government "hindrance" and "perturbations" includes "much similar evidence. . . ."

\* \* \*

In sum, PCL did not demonstrate that its project delay was caused exclusively or even predominantly by the government, nor did PCL distinguish between government and contractor caused delay. In the absence of this proof, USBR cannot be held liable for delay/impact costs, for "hindering" PCL, and therefore for "breach of contract" related to PCL's additional time performing the project.

*PCL II*, 47 Fed.Cl. at 800–02, 804 (footnote omitted).

PCL, nevertheless, now argues that neither the delay claims nor the CRX claims stem from the same transactional facts as the breach action. Regarding the delay claims, PCL argues that the claims currently before the court involve "a classic windows Critical Path Management (CPM) delay analysis of the delays caused by the Government on the project," and that the "detailed time impact schedule analysis contained in PCL's D & D [delay and disruption] claim uses the actual delay durations to determine actual impact." PCL, therefore, contends that it is presently using "the best evidence now available," and

that this analysis "has nothing whatsoever to do with allegations of material misrepresentation, fraudulent inducement, superior knowledge, hindrance or cardinal change" of the earlier breach complaint. Regarding the CRX claim, PCL contends "[t]he operative facts concerning whether or not PCL is entitled to compensation for each CRX at issue turns on very specific entitlement and pricing issues relating to each individual CRX."

■ However, simply identifying newly developed or different evidence is not enough to overcome application of the doctrine of *res judicata*, or claim preclusion. *See* Restatement (Second) of Judgments § 25(1) ("The rule of § 24 [claim preclusion] applies to extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action[.]"). PCL's current claims stem from the same contract, between the same parties, during the same time period, and allege the same underlying facts and alleged wrongs as in its previous breach claim. PCL does not allege any new factual allegations in its current complaint. Thus, while purporting to advance a new claim, PCL is merely advancing a different theory of recovery, and perhaps better developed evidence, for the same set of transactional facts. *See Tindle v. United States*, 56 Fed.Cl. 337, 347 (2003) ("Altering the theory of recovery does not create a new claim under the transactional approach."); *Lyons v. United States*, 45 Fed.Cl. 399, 404 (1999) ("Changing the theory of recovery does not form a new claim under the transactional approach."). As the Restatement (Second) of Judgments commentators explain:

*f. Successive actions for different remedies.* As the result of a single transaction or a connected series of transactions giving rise to a unitary claim, the plaintiff may be entitled to a number of alternative or cumulative remedies or forms of relief against the defendant. In a modern system of procedure it is ordinarily open to the plaintiff to pursue in one action all the possible remedies whether or not consistent, whether alternative or cumulative,

and whether of the types historically called legal or equitable.

Therefore it is fair to hold that after judgment for or against the plaintiff, the claim is ordinarily exhausted so that the plaintiff is precluded from seeking any other remedies deriving from the same grouping of facts.

Restatement (Second) of Judgments § 25, cmt. f.

■ PCL's claims are not sufficiently distinct to escape the application of *res judicata*. Plaintiff has provided the court with insufficient reason to deviate from the general rule, and to overcome the presumption that claims by the same party arising out of the same contract constitute the same claim for *res judicata* purposes. *See Phillips/May Corp. v. United States*, 524 F.3d at 1272; *compare Fla. Power & Light Co. v. United States*, 198 F.3d 1358, 1361 (Fed.Cir.1999) (finding that plaintiff's claims were sufficiently distinct to avoid the application of *res judicata* when "[t]he two sets of claims involve[d] not only different time periods, but also different agencies with different contracting officers and different statutory mandates regarding pricing policy.") (cited and quoted by *Phillips/May Corp. v. United States*, 524 F.3d at 1271).

*28 U.S.C. § 2519 ("Conclusiveness of Judgment")*

■ The government adds that PCL's present claims are barred by 28 U.S.C. § 2519, which states:

A final judgment of the United States Court of Claims against any plaintiff shall forever bar any further claim, suit or demand against the United States arising out of the matters involved in the case or controversy.

28 U.S.C. § 2519 (2000). The government contends that section 2519 is similar to the doctrine of *res judicata*, addressed above, but that "[t]his statute unambiguously bars PCL's delay case, and does so without the need to navigate through PCL's energetic, though unavailing, arguments against *res ju-*

*dicata."* Plaintiff responds that: "The primary purpose of this Act was to give the [United States] Court of Claims jurisdiction to render final judgments, not to impose a different standard of *res judicata* that was unique to the Court of Claims and its successors." After reviewing the history of the United States Court of Claims, this court agrees with plaintiff's conclusion in this regard.

When the First Amendment of the United States Constitution was adopted in 1791 as part of the Bill of Rights, it guaranteed the right of the people to petition the government for redress of grievances. The First Amendment to the United States Constitution states:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I; *see also* Wilson Cowen, Chief Judge (Ret.), Philip Nichols, Jr., Associate Judge, and Marion T. Bennett, Associate Judge, *The United States Court of Claims, A History*, Part II 4 (1978) (hereafter, United States Court of Claims History, Part II). The manner of petitioning, however, was not specified. *Id.* Thus, prior to the creation of the United States Court of Claims, a private citizen's only means of obtaining compensation from the government was to request "individually tailored waivers of sovereign immunity, through private Acts of Congress." *Library of Congress v. Shaw*, 478 U.S. 310, 316 n. 3, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986) (citing United States Court of Claims History, Part II, at 4).

As the number of private claims increased, the number of claims decided decreased, preventing many citizens with valid claims from receiving relief. *See* Floyd D. Shimomura, *The History of Claims Against the United States: The Evolution from a Legislative Toward a Judicial Model of Payment*, 45 La. L.Rev. 625, 648–650 (1985); *see also* William A. Richardson, Judge,[3] *History, Jurisdiction,*

---

3. William A. Richardson was appointed as a judge to the United States Court of Claims in

1874 and then served as Chief Judge to the court from 1885 until his death in 1896. *See* Marion

*and Practice of the Court of Claims,* 17 Ct. Cl. 3, 3–4 (1882) (hereafter, Judge Richardson's Court of Claims History) ("It was seriously felt both in and out of Congress that the constitutional guarantee was of little value, and was substantially violated if private claimants against the government were allowed merely the naked right to have their petitions presented, without any further investigation and consideration."); William M. Wiecek, *The Origin of the United States Court of Federal Claims,* 20 Admin. L.Rev. 387, 398 (1967) ("The unworkability and injustice of the legislative claims system were the most important causes for the creation of the judicial Court of Claims in 1863.").

As initially constructed, three judges were to sit on the tribunal and hold adjudicatory proceedings for claims against the government. *See* Judge Richardson's Court of Claims History, 17 Ct.Cl. at 6. The court's decisions, however, were not final. *See Lunaas v. United States,* 936 F.2d 1277, 1278 (Fed.Cir.), *reh'g denied and suggestion for reh'g en banc declined* (Fed.Cir.1991), *cert. denied,* 502 U.S. 1072, 112 S.Ct. 967, 117 L.Ed.2d 132 (1992). Rather, the court would issue recommendations to Congress which would then take an additional review of the case and make a final determination. United States Court of Claims History, Part II, at 18. Claimants, therefore, became subject to two reviews—one by the court, and one by Congress. *Id.* at 18–19. The court's inability to render final decisions, therefore, prevented the court from fulfilling its purpose of giving private citizens a fair and equitable adjudication of their claims against the government.

President Lincoln addressed the problem in his Annual Message to Congress in 1861 stating:

It is important that some more convenient means should be provided, if possible, for the adjustment of claims against the Government, especially in view of their increased number by reason of the war. *It is as much the duty of Government to render prompt justice against itself, in favor of citizens, as it is to administer the same between private individuals.*[4] The investigation and adjudication of claims, in their nature belong to the judicial department; besides, it is apparent that the attention of Congress will be more than usually engaged, for some time to come, with great national questions. It was intended by the organization of the Court of Claims mainly to remove this branch of business from the Halls of Congress; but while the court has proved to be an effective and valuable means of investigation, it in great degree fails to effect the object of its creation for want of power to make its judgments final.

Fully aware of the delicacy, not to say the danger, of the subject, I commend to your careful consideration whether this power of making judgments final may not properly be given to the court, reserving the right of appeal on questions of law to the Supreme Court, with such other provisions as experience may have shown to be necessary. (Emphasis supplied.)

United States Court of Claims History, Part II, at 20–21 (quoting 62 Cong. Globe, 37th Cong., 2d Sess., App. at 2 (1862), *reprinted* in J.A. Hoyt, *Legislative History,* 1 United States Court of Claims Digest XVIII (1950)). Section 5 of the resulting legislation provided for appeal of final judgments by the United States Court of Appeals to the United States Supreme Court, and section 7 provided "[t]hat any final judgment rendered against the claimant on any claim prosecuted as aforesaid shall forever bar any further claim or demand against the United States arising out of the matter involved in the controversy." Act of March 3, 1863, ch. 92, 12 Stat. 765. The modern version of this language,

---

T. Bennett, Judge, *The United States Court of Claims, A History,* Part I 59 (1976).

4. Emphasis was added by the authors of the United States Court of Claims History, Part II, who pointed out that the highlighted words by President Lincoln were prominently displayed in the entranceway to the United States Court of Claims Building, in Washington, D.C. The same building is now known as the Howard T. Markey National Courts Building, and houses the United States Court of Appeals for the Federal Circuit and the United States Court of Federal Claims. President Lincoln's words remain prominently displayed.

applied to this court, is found in 28 U.S.C. § 2519, which provides that: "A final judgment of the United States Court of Federal claims against any plaintiff shall forever bar any further claim, suit, or demand against the United States arising out of the matters involved n the case or controversy."

The thrust of the legislative history of section 2519 was for the United States Court of Claims to be able to issue final, binding judgments to resolve disputes. Six years after the above-quoted language was enacted, in 1869, the United States Court of Claims, stated:

> It is not perceived by us that these provisions relate to judgments other than those rendered upon the merits, nor that they change the rule of the common law, nor that they were intended to do more than attach to the final judgments of this court the conclusiveness which the common law ascribes to the final judgments of all courts of competent jurisdiction.

*Spicer v. United States,* 5 Ct.Cl. 34, 37 (1869), *rev'd on other grounds sub nom. United States v. Smoot,* 82 U.S. (15 Wall.) 36, 51, 8 Ct.Cl. 96, 21 L.Ed. 107 (1872); *see also Boruski v. United States,* 493 F.2d 301, 304 (2d Cir.) (Under the "general res judicata principles applied to the Court of Claims in 28 U.S.C. § 2519, appellant cannot be awarded further back pay. The issue of the validity of appellant's honorable discharge could have been presented to the Court of Claims, but was not, and the decision of the Court of Claims thus bars any suit for back pay after August 28, 1951."), *appeal dismissed, cert. denied,* 419 U.S. 808, 95 S.Ct. 20, 42 L.Ed.2d 34 (1974), *cert. denied,* 421 U.S. 1013, 95 S.Ct. 2419, 44 L.Ed.2d 681 (1975); *Bertelsen v. White,* 58 F.2d 792, 796 (D.Mass.1932) ("The statutes provide that a final judgment against the claimant on a claim prosecuted in the Court of Claims shall forever bar any further claim or demand against the Unites States arising out of the matters involved in the controversy. Jud.Code § 179, 28 USCA § 286 [§ 2519 was based on § 286].")*, aff'd,* 65 F.2d 719 (1st Cir.1933).

Contrary to defendant's argument, the legislative history of section 2519 and the above cases suggest that section 2519 and the common law doctrine of *res judicata* are co-extensive. Section 2519 adds nothing—and takes away nothing—from the doctrine of *res judicata.* Section 2519's predecessor legislation was part of the early effort to add finality and conclusiveness to Court of Claims decisions. Defendant does not demonstrate that section 2519 repeals any one of the three factors required for *res judicata:* "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Phillips/May Corp. v. United States,* 524 F.3d at 1267–68 (quoting *Ammex, Inc. v. United States,* 334 F.3d at 1055). In fact, the language of section 2519, barring further claims against the United States, "arising out of the matters involved in the case or controversy," raises as an issue the third factor in *res judicata* deliberations (the same set of transactional facts). Defendant, in raising section 2519 in its reply, and not in its principal brief, as though the argument was an afterthought, cited only the above-noted *Bertelsen* and *Boruski* cases briefly, in a footnote, and cited no other cases in support of its theory that section 2519 somehow forecloses the common sense factors which make up the doctrine of *res judicata.* The court concludes that regardless of 28 U.S.C. § 2519, the defendant must demonstrate the factors of *res judicata* to substantiate its motion for summary judgment, and further that the court must review plaintiff's assertion that it is permitted to split its claims under the Contract Dispute Act, more particularly, whether plaintiff reserved claims presented in its latest complaint for subsequent litigation.

*Claim Splitting under the Contract Disputes Act*

■ Plaintiff argues that *res judicata* does not apply to suits brought under the Contract Disputes Act [CDA] because the Act allows contractors to split their claims into more than one cause of action, "render[ing] the doctrine of *res judicata* inapplicable." Plaintiff points to Section 609(d) of the Contract Disputes Act, which states:

> (d) Consolidation[.] If two or more suits arising from one contract are filed in the

United States Court of Federal Claims and one or more agency boards, for the convenience of parties or witnesses or in the interest of justice, the United States Court of Federal Claims may order the consolidation of such suits in that court or transfer any suits to or among the agency boards involved.

41 U.S.C. § 609(d) (2000). The plaintiff argues that "[t]his provision [41 U.S.C. § 609(d)] not only expressly recognizes that multiple suits may be brought arising out of a single contract, but recognizes that flexibility in adjudicating government contract claims is necessary."

The Federal Circuit recently addressed the issue in *Phillips/May*, coming to a conclusion adverse to PCL's view:

Admittedly, the statute [41 U.S.C. § 609(d)] is somewhat ambiguous as to whether it permits (1) the filing of all claims arising from a single contract in separate fora, or (2) only claims that do not arise from the same transactional facts. We have not previously addressed this question. However, the history of the CDA makes clear that the statute is not designed to alter the usual rules of res judicata.

*Phillips/May Corp. v. United States*, 524 F.3d at 1268 (brackets added).

The Federal Circuit's conclusion in *Phillips/May* was based on the legislative history of the CDA. Senate Bill 3178 contained a provision which would have permitted claim splitting. The language in the bill read:

SEC. 10. (d) Except as otherwise provided in this Act, and notwithstanding any statute or other rule of law, or any contract provision, *every claim founded upon the same express or implied contract with the United States shall constitute a separate cause of action* for purposes of any suit in a court of competent jurisdiction, and such court may, in its discretion, consolidate separate claims for purposes of decision or judgment, or delay acting on claim pending action on another claim.

*Phillips/May Corp. v. United States*, 524 F.3d at 1269 (quoting 124 Cong. Rec. S36263 (daily ed. Oct. 12, 1978) (emphasis added by Federal Circuit) (*see* Contract Disputes Act of 1978, Pub.L. No. 95–563, *Legislative History*, vol. I, doc. 19, at S36263)). The above-quoted language was removed from the Bill before enactment. *Id.* The Federal Circuit concluded that: "The elimination of original subsection (d) strongly suggests that Congress did not intend to allow contractors to avoid the effects of claim preclusion by splitting factually related claims." *Id.*

During the committee hearings on the Bill, Irving Jaffe, Deputy Assistant Attorney General, Civil Division, United States Department of Justice, testified that he had specific concerns about the claim-splitting provision in the Bill. He stated that "[t]he provision of the bill permitting the splitting of a cause of action is particularly troublesome. It sanctions the fragmentation of claims at a time when both judicial and legislative trends strive to consolidate litigation." Joint Hearings, S. Comm. on Governmental Affairs and S. Comm. on the Judiciary, at 177 (June 20, 1978) (statement of Irving Jaffe) (*see* Contract Disputes Act of 1978, Pub.L. No. 95–563, *Legislative History*, vol. II, doc. 12, at 177). Mr. Jaffe also stated:

The bills would eliminate the present substantive principle of law precluding the splitting of a cause of action and would permit contractors to fragment their causes of action into unlimited numbers of separate claims. The bills provide each such claim would constitute a separate cause of action, so that they may be spread among the tribunals where each such claim may be tried. This legislation would cause, in our estimation, a very substantial increase in litigation to be tried in the federal courts in the complex area of government contract claims.

Joint Hearings, S. Comm. on Governmental Affairs and S. Comm. on the Judiciary joint hearings on S. 3178, at 189 (June 20, 1978) (statement of Irving Jaffe) (*see* Contract Disputes Act of 1978, Pub.L. No. 95–563, *Legislative History*, vol. II, doc. 12, at 189). Mr. Jaffe also stated with regards to the Senate Bill, section 10(d) of Senate Bill 3178, quoted verbatim above:

This section is the most troublesome provision of the bill. We are strongly opposed

to Section 10(d). This provision runs counter to all trends of modern court reform. It permits multiple suits on what should be one cause of action. It permits a contractor to tailor its claims with respect to their dollar amounts so as to make them "small claims" or claims under $25,000. There is no reason why a contractor could not, for example, file a separate claim for each day of delay it alleges the Government has improperly caused—60 claims for 60 days in delay damages, etc. The contractor can then try the small claims procedure (Section 9) and, if unsuccessful, try other tribunals as shown by our list, *supra*, pp. 34–36.

Joint Hearings, S. Comm. on Governmental Affairs and S. Comm. on the Judiciary, at 228 (June 14, 1978) (statement of Irving Jaffe) (*see* Contract Disputes Act of 1978, Pub.L. No. 95–563, *Legislative History*, vol. II, doc. 12, at 228).

As noted in the *Phillips/May* case, the reasoning behind the decision to delete section 10(d) was as follows:

> The amendment [deleting section 10(d) of S. 3178] *is out of a concern that the section might be interpreted as permitting contractors to split claims arising out of the same set of facts*, thereby needlessly multiplying causes of action and encouraging forum shopping. It *is not the intention of the committees to change the present law* regarding joinder, compulsory counterclaims and definition of separate claims.

*Phillips/May Corp. v. United States*, 524 F.3d at 1270 (quoting 124 Cong. Rec. S36267 (daily ed. Oct. 12, 1978) (statement of Sen. Byrd) (emphasis added by Federal Circuit) (*see* Contract Disputes Act of 1978, Pub.L. No. 95–563, *Legislative History*, vol. I, doc. 19, at S36267)). "This statement could not have been clearer. Congress definitively rejected the idea that the CDA was abrogating the doctrine of claim preclusion and permitting the splitting of claims based on the same set of transactional facts." *Phillips/May Corp. v. United States*, 524 F.3d at 1270 (footnote omitted); *see also Placeway Constr. Corp. v. United States*, 920 F.2d at 907 ("To determine whether two or more separate claims, or only a fragmented single claim, exists, the court must assess whether or not the claims are based on a common or related set of operative facts. If the court will have to review the same or related evidence to make its decision, then only one claim exists."). The CDA does not repeal the doctrine of *res judicata*, and this court previously determined that plaintiff has provided the court with insufficient reason to deviate from the presumption that claims arising out of the same contract constitute the same claim for purposes of applying the doctrine of *res judicata*. *See Phillips/May Corp. v. United States*, 524 F.3d at 1272.

### Jurisdiction Over Claims not Certified and Not Presented to a Contracting Officer

The CDA provides that: "All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a) (2000). A claim over $100,000.00 must be certified by the contractor that the claim is made in good faith, that the claim is supported by accurate and complete data to the best of the contractor's knowledge and belief, and that the amount claimed is believed to be accurate. 41 U.S.C. § 605(c)(1). The contracting officer's final decision may be appealed to this court or, formerly, to an agency Board of Contract Appeals, and now to the Civilian Board of Contract Appeals. 41 U.S.C. § 606 (2000) (board); 41 U.S.C. § 609(a)(1) (court). Because plaintiff's CRX claims and delay claims were not separately certified or submitted to the contracting officer, nor specifically the subject of a contracting officer's final decision at the time plaintiff filed the breach suit in this court, plaintiff argues that this court was without jurisdiction to review those claims along with the breach claims. Plaintiff argues:

> A critical omission in the Government's motion [for summary judgment] is its failure to recognize that where PCL's claims for equitable adjustment had not been presented to and decided by the contracting officer at the time PCL filed its Breach Complaint, the Court did not have subject matter jurisdiction to hear those claims. This fact alone is dispositive of the Government's motion.

The contractor in *Phillips/May* raised a similar jurisdictional argument, which was rejected by the Federal Circuit:

> Even if Phillips were correct that the Inspection Claim could not have been appealed at the same time as the others, it was within Phillips's control to make all ten claims ripe for review at once. This is not a situation in which the claims were required to be brought before different contracting officers, as in *Florida Power & Light Co. v. United States*, 198 F.3d 1358, 1360 (Fed.Cir.1999). Phillips was obligated to prosecute its claims in the same proceeding; it could not avoid the application of res judicata through strategic delay.... Only its own strategic choice prevented the joinder of all claims.

*Phillips/May Corp. v. United States*, 524 F.3d at 1271. Similarly, PCL could have brought its CRX and delay claims before the contracting officer at the same time it presented its breach claim to the contracting officer, but chose not to. Moreover, the substance of the breach claims, calling into question the day-to-day operations at the Hoover Dam construction project, were at issue when the contracting officer received the plaintiff's certified claim and when the court received the plaintiff's breach complaint. Much later, and, apparently only in support of this current action, did PCL file CRX claims and a delay claim with the contracting officer, although it received final decisions from the contracting officer, denying the claims based on *res judicata.*

As the Federal Circuit explained in *Phillips/May*, the reach of the doctrine of *res judicata* is not limited to claims previously adjudicated, but also claims which could have been adjudicated.

> As the Supreme Court explained, "when a final judgment has been entered on the merits of a case, '[i]t is a finality as to the claim or demand in controversy ... not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" *Nevada v. United States*, 463 U.S. 110, 129–30, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983) (quoting *Cromwell v.*

*County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876)).

*Phillips/May Corp. v. United States*, 524 F.3d at 1267–68.

In this regard, PCL argues that it did not "have a 'full and fair opportunity to litigate' its claims for equitable adjustment in the breach trial because this Court did not have jurisdiction over them. Accordingly, *res judicata* does not apply." PCL, however, held the key to litigating the CRX and delay claims in its own hands, but chose not to do so, perhaps for its own strategic purposes, or because it had not assembled, or could not assemble, all of the materials necessary to file its delay and CRX claims when it filed its breach claim. A single judicial review would have been, not only the most efficient, but the proper way to resolve plaintiff's claims. The court held a lengthy trial to resolve the ten-count, earlier breach complaint. Moreover, the United States Court of Appeals for the Federal Circuit reviewed the extensive trial record of numerous witnesses and voluminous trial exhibits. To once again review the same material, under different legal theories of recovery, with many of the same issues and much of the same testimony and exhibits, defies not only common sense but is an approach rejected by the binding precedent.

*Reservation of Claims*

*Agreement by the Parties to Permit Claim Splitting*

■ The plaintiff next argues that it qualifies for an exception to the doctrine of *res judicata*, citing the Restatement (Second) of Judgments:

> § 26. Exceptions to the General Rule Concerning Splitting

> (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

> (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or

(b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or....

Restatement (Second) of Judgments § 26(1)(a), (b) (1982).

The plaintiff argues that "the government tacitly agreed or acquiesced in PCL bringing more than one claim." The United States Court of Appeals for the Federal Circuit has adopted the Restatement (Second) of Judgments' exception to the normal rules of claim preclusion, when "[t]he parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein...." *Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d 1227, 1231 (Fed.Cir. 2006) (quoting Restatement (Second) of Judgments § 26(1)(a) (1982)).

Comment a. of the Restatement explains the exception:

a. *Consent to or acquiescence in splitting (Subsection (1)(a)).* A main purpose of the general rule stated in § 24 is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim.

Restatement (Second) of Judgments § 26, cmt. a., at 234–35. The Restatement commentary is useful in ascertaining how explicit the agreement of the parties to allow claim splitting needs to be. For example, "[t]he parties to a pending action may agree that some part of the claim shall be withdrawn from the action with the understanding that the plaintiff shall not be precluded from subsequently maintaining an action based upon it." *Id.* at 235. "Or there may be an effective agreement, before an action is commenced, to litigate a part of a claim in that action but to reserve the rest of the claim for another action." *Id.* In the present case, plaintiff has provided no evidence of a pre-litigation agreement between the parties, identifying what was to be litigated and what was to be reserved for future litigation. In fact, plaintiff selected the breach theory of the earlier case, although discussing and presenting evidence on the delay and differing site condition issues throughout the course of the breach trial, and plaintiff specifically declined to pursue a theory based on remedy-granting clauses in the contract.

The Restatement also provides that: "Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiffs's claim is effective as an acquiescence in the splitting of the claim." *Id.* In the present case, the two actions (the breach claim and the present complaint) were not maintained simultaneously, so defendant could not have acquiesced through silence to the future litigation of one of the claims. The record does not reflect an express agreement between the parties, either orally or in writing, that the breach claim would be litigated first and the CRX/delay claims would be litigated later. Moreover, the defendant denies that any such agreement existed.

In the *Pactiv* case, the United States Court of Appeals for the Federal Circuit noted that:

"[C]ourts have expressed willingness to honor an express agreement between the parties that an action on one part of the claim will not preclude a second action on another part of the same claim ...." [quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4415, at 354 (2d ed.2002) ]. Thus, the parties can, in a separate agreement, like the 1998 Agreement here, reserve the right to litigate a claim that would otherwise be barred by res judicata. Restatement (Second) of Judgments § 26, cmt. a ("So also the parties may enter into an agreement, not directed to a particular contemplated action, which may have the effect of preserving a claim that might otherwise be superseded by a judgment...."). But that reservation must be express.[5]

5. At this point, the *Pactiv* opinion contained the following footnote:

*Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d at 1231 (omissions in original; brackets added). The Federal Circuit concluded that the agreement between the parties did not expressly permit Pactiv Corporation to engage in future litigation, and affirmed the dismissal of the case on *res judicata* grounds. *Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d at 1231–32.

PCL does not point to an actual express agreement between the parties, either orally or in writing, but cites to standard, reservation of claim language in all of the contract modifications, reflecting changes to the PCL–Bureau of Reclamation contract during contract performance. Plaintiff also cites to statements made by defendant's counsel during closing argument in the breach trial and in a letter from defendant's counsel to plaintiff's counsel in the months before closing argument, as indicia of an express agreement.

Turning first to the alleged reservation of claim language in the contract modifications, PCL quotes the following statement made by defendant's counsel during closing argument:

> The impact of this release language is that they [PCL] are releasing everything but an equitable adjustment for the time and cost impacts or extended overhead for impacts on unchanged work and for any contribution towards cumulative impact of all changes on the critical path of project schedule.

The "release language" plaintiff raises states as follows:

> *Release:* The Contractor agrees that this supplemental agreement is a complete equitable adjustment for all Contractor proposals or claims whatsoever arising out of, resulting from, and/or directly related to the above occurrences, revisions to the contract, and/or this supplemental agreement and hereby releases the Government from all liability under this contract for further equitable adjustments for said occurrences, revisions, and/or this supplemental agreement, except for time and cost impacts for extended overhead which can not [sic] be determined until the effect on the critical path of the project schedule is analyzed.

This standard release language was taken from a contract modification signed by both parties, in which the government paid PCL for changes to the statement of work. This, and other contract modifications, were executed with this release language during contract performance and well before the breach complaint was filed by PCL. As a result, there could be no calculation by the contracting officer, who signed the contract modification for the government, that a not yet even filed breach claim would be split and one aspect of the construction claim would tried first and the delay/CRX claims would be the tried later. This standard, pre-litigation, release language does not subordinate the doctrine of *res judicata* and its principle of avoiding multiple litigation, nor does it reflect an "express agreement" to litigate one claim now and another claim later, in deroga-

See, e.g., *Norfolk S. Corp. v. Chevron, U.S.A.*, 371 F.3d 1285, 1289 (11th Cir.2004) ("In determining the res judicata effect of an order of dismissal based upon a settlement agreement, we should also attempt to effectuate the parties' intent. The best evidence of that intent is, of course, the settlement agreement itself .... as interpreted according to traditional principles of contract law."); *Hallco Mfg. Co. v. Foster*, 256 F.3d [1290,] 1297 [ (Fed.Cir.2001) ] (noting that in a settlement and dismissal judgment, the parties can expressly reserve the right to later litigate an issue); *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 225 (7th Cir.1993) (noting that "[t]he parties can also if they want agree to split a single claim into two or more suits"); *Keith v. Aldridge*, 900 F.2d 736, 741 (4th Cir.1990) (holding that "[c]aim preclusion will not apply, however, if the parties intended to settle only one part of a single claim and intended to leave another part open for future litigation"); *Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1577 (Fed. Cir.1989) (stating that an express reservation "must be discerned within the four corners of the consent decree, and cannot be expanded beyond the decree's express terms"); *Medina v. Wood River Pipeline Co.*, 809 F.2d 531, 533–34 (8th Cir.1987) (recognizing general rule that parties may by express agreement consent to the splitting of a cause of action); *Urbanizadora Santa Clara, S.A. v. United States*, 207 Ct.Cl. 297, 518 F.2d 574, 578 (1975) ("If plaintiff intended to preserve and pursue a claim ... following the execution of the release, it was incumbent on plaintiff to manifest this intention in a clearly recognizable manner....").

*Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d at 1231 n. 2 (omissions in original).

tion of *res judicata*, contemplated by the Federal Circuit case precedent and the Restatement (Second) of Judgments language cited above.

PCL also argues that a letter from defendant's counsel to PCL's former counsel makes it "clear that it [the government] would be willing to entertain a later claim for equitable adjustment in the event the Court ruled in the Government's favor in the breach trial, which, of course, is precisely what happened...." Defendant's counsel, however, objects to review of the letter on the grounds that it was part of settlement discussions on the breach case, citing Federal Rule of Evidence 408. Rule 408 prohibits the admissibility of statements made in settlement negotiations if offered to prove liability or the amount of a claim. Fed.R.Evid. 408(a). Plaintiff responds that the letter is submitted "to demonstrate that the Government agreed to or acquiesced in the splitting of its claims, not to prove liability for or the amount of its claims," also citing Federal Rule of Evidence 408.

In the first place, although earlier settlement negotiations had taken place, the referenced late stage settlement discussions, after the introduction of evidence in the breach case, with only closing argument remaining, failed to resolve the case, resulting in a trial and issuance of an opinion. The policy to protect the sanctity of any settlement negotiations is an important one to promote efficient, less costly resolution in appropriate cases. *See, generally, Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc.,* 265 F.3d 1294, 1308 (Fed.Cir.2001) (discovery was not permitted into negotiations surrounding a settlement agreement based on the failure to show the materiality of the settlement agreement and the Rule 408 policy in favor of protecting settlement agreements); *Nat'l Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1197 (Fed.Cir.1996) (affirming district court's exclusion of evidence as settlement negotiations subject to Fed.R.Evid. 408); *Power Auth. of New York v. United States,* 62 Fed. Cl 376, 377–79 (2004) (defendant's motion to strike settlement document granted); *Ryan–Walsh, Inc. v. United States,* 39 Fed.Cl. 305, 307 (1997) (defendant's motion in

limine to restrict statement made during settlement negotiations granted).

Regardless, plaintiff's reliance on the letter is not sufficient to establish defendant's acquiescence to claim splitting in this case. Plaintiff points to selected portions of the letter from defendant's counsel. However, for context, other portions of the letter are added below to those identified by plaintiff to better reflect the context in which the government's counsel was writing. The relevant text of the letter neither commits to claim splitting nor reveals any protected information. Defendant's counsel's letter, in large part, stated:

As you know, PCL has now fully litigated its breach of contract liability case which was explicitly premised upon contentions that a detailed schedule and cost analysis was either "not relevant" or "impossible," and that the contractual mechanisms for equitable adjustments are "inadequate." For approximately six years, even prior to PCL's initiation of its breach of contract case, the Government has been proposing that PCL's only legitimate avenue for any potential additional compensation is not via a breach of contract claim, but via a detailed schedule and cost analysis to support an equitable adjustment claim/s—which is the only type of claim that PCL preserved when the vast majority of the contract changes were resolved in bilateral modifications. PCL ignored our admonitions, however, and the result has been a waste of approximately five years, large expenditures of Government time and costs, and exponentially more costs incurred by the "employee owners" of PCL, all without moving any closer towards a contractual resolution of PCL's delay/impact claims.

Although you now offer Mr. Schwarzkopf's report, and indicate that PCL is "most anxious to reconvene" settlement discussions, it is not in the best interest of the Government to continue to litigate a breach of contract case while at the same time attempting to negotiate the resolution of issues that are only "relevant" to a claim that has never been submitted by PCL. This is especially true considering the history of PCL's so-called efforts to

address this dispute and based upon the substantive contents of Mr. Schwartzkopf's analysis. Consequently, we will not engage in discussions with PCL unless and until PCL dismisses its breach of contract case with prejudice and submits a certified equitable adjustment claim for delay/impacts, or the Court enters judgment in favor of the Government on all counts of PCL's breach on contract case and PCL submits a certified equitable adjustment claim for delay/impacts. If, on the other hand, the Court finds in favor of PCL upon any aspect of PCL's breach of contract case, the substance of the Court's decision will, by definition, dictate the parameters of any "damages" proceedings and any subsequent settlement discussions.

In conclusion, PCL has already caused two Federal Agencies and a Federal Court to expend substantial resources to deal with PCL's inappropriate breach of contract claim. To the extent that the Department of Justice can prevent further fruitless expenses, we will, and at this point we decline to participate in further efforts to resolve uncertified contentions that (at PCL's own insistence) do not relate to PCL's case.

(footnotes omitted). In sum, these comments by defendant's counsel were made during settlement discussions and were part of negotiations to conclude the cases then before the court. No promises were made as to claim splitting and no agreement was reached.

In addition to defendant's counsel's letter, PCL attempts to use statements made by defendant's counsel on pages 12995 through 13037 of the trial transcript, during closing argument in the breach trial, as further indicia of the existence of an express agreement by the parties to permit future litigation. Defendant's counsel stated during closing argument that, if no breach of contract were to be found by the court,

> Then PCL will be free to go off and make an equitable adjustment claim if it wants to. The contracting officer will get an opportunity to pass on it, as he has never been provided. And if the parties do not

resolve them at that level, it will proceed just like a normal case. And maybe or not you and I will see each other again litigating an equitable adjustment claim for delay. But that is the effect of what happens if you [the court] find[s] no breach.

* * *

> We, the Bureau [of Reclamation], are ready, and the contracting officer has always been and continues to be ready to adjudicate an equitable adjustment claim.

* * *

> Speediest [resolution of the case] would be to have PCL certify [to the contracting officer] a legitimate delay claim, and then we'll sit down and chat.

Defendant's counsel's above-quoted letter was dated May 27, 1999, and the defendant's counsel's statements during closing argument were made on July 2, 1999. However, the record does not reflect that these comments from defendant's counsel were the result of a jointly created, express agreement negotiated with plaintiff's counsel. The statements during closing argument were largely elicited in response to hypothetical scenarios. Defendant argues that these statements during closing argument, therefore, were not official agreement, and did not rise to the level of an express reservation of the plaintiff's right to maintain later litigation.

The court employed hypotheticals during oral argument, because at that time it had not ruled on the breach case. To defendant, what that meant was:

> Without the final decision of the trial court, it was impossible for the Government to know whether and how PCL's breach claims would be addressed and whether and to what extent all of the transactional facts of PCL's claim would be determined by the breach decision.

* * *

> Our letter of May 27, 1999, and all of the other statements of "tacit agreement" or "acquiescence" cited by PCL were made *prior* to the Court's decision on PCL's breach claim, which, by definition, was pri-

or to the Court's full and final adjudication of the transactional facts upon which PCL's breach (and delay) case was based. PCL's revisionist interpretation of our settlement discussions aside, we clearly communicated to PCL that if PCL wished to dismiss its breach case, or if the Court found in favor of the Government (which would not necessarily entail a full and final adjudication of the transactional facts), that PCL's delay claim might be considered. Now that the Court has fully and finally adjudicated all of PCL's breach claims, which precludes further claims that could have been based upon the same transactional facts, PCL's claim in barred by *res judicata*.

The counter assertions by the parties and varying interpretations of what was intended by communications between them is why explicit, express agreements are favored. *Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d at 1231 ("[C]ourts have expressed willingness to honor an express agreement between the parties that an action on one part of the claim will not preclude a second action on another part of the same claim .... " (quoting 18 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *Federal Practice and Procedure* § 4415, at 354 (2d ed.2002) (omission in original))).

Rather than basing its argument on an explicit, joint, negotiated agreement, which could have involved claim splitting and the waiver of *res judicata*, plaintiff argues instead that: "The Government tacitly agreed or acquiesced in PCL bringing more than one claim." However, defendant's counsel notes that "the Government could not possibly "agree" or "acquiesce" to something that PCL itself did not seek to do." Defendant is referring to the plaintiff's articulated choice of a breach strategy, as opposed to a remedy-granting clause strategy. At closing argument on the breach claim, plaintiff's former counsel stated: "Your Honor, as I say, I don't want to say anything that encourages other than a breach of contract result here." Defendant's view of this, also expressed at closing argument, was that, "By design, PCL was never pursuing an equitable adjustment. They were pursuing a total breach case."

The court asked plaintiff's counsel, "Are you saying that your client is absolutely adamant that they will not present a certified [equitable adjustment] claim [to the contracting officer] at this point?" Response: "Yes, Your Honor." Again, plaintiff's former counsel: "We are not going back to a contracting officer." And again, plaintiff's former counsel: "But we're not going back that route. And my client is very emphatic about that." Given PCL's posture, it cannot be said that defendant was asked to agree to or "acquiesced" in a PCL strategy to pursue a separate equitable adjustment, remedy-granting clause, delay/CRX claims strategy, because the record does not reflect such a strategy on the part of plaintiff. PCL's strategy was to rely on a total breach theory. Plaintiff has not demonstrated that defendant agreed to or acquiesced in a strategy plaintiff itself decided not to embrace.

Furthermore, as noted earlier, the Restatement (Second) of Judgments provides guidance on what it takes for the government to be considered as having acquiesced in the splitting of PCL's claims. The Federal Circuit has adopted the Restatement (Second) of Judgments § 26(a), which allows for claim splitting in cases in which a defendant has "acquiesced therein." *See Pactiv Corp. v. Dow Chem. Co.*, 449 F.3d at 1231. The Restatement (Second) explained what could qualify as acquiescence on the part of a defendant, as follows:

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

Restatement (Second) of Judgments § 26, cmt. a., at 235; *see also Bankr.Estate of Lake Geneva Sugar Shack, Inc. v. Gen. Star Indem. Co.*, 200 F.3d 479, 481–85 (7th Cir. 2000) (defendant did not object to two cases, pending at the same time in different forums,

and was held to have acquiesced in the claim splitting); *Klipsch, Inc. v. WWR Tech., Inc.,* 127 F.3d 729, 735 (8th Cir.1997) (plaintiff filed one action, then a month later a second action so that both actions were pending at the same time; defendant was held to have acquiesced to the second action which otherwise would have been barred by *res judicata* because defendant did not raise *res judicata* until "more than a year after Klipsch had filed its second lawsuit and some nine months after the entry of judgment in the first lawsuit"); *Rosado v. Gen. Elec. Circuit Breakers, Inc.,* 805 F.2d 1085, 1087 (1st Cir.1986) ("While the two actions were pending against defendant, defendant did not complain that plaintiff was splitting his cause of action and forcing defendant to defend in two forums."); *Power Travel Int'l, Inc. v. Am. Airlines, Inc.,* No. 1:02–7434, 2004 WL 5299598, at *7–9 (S.D.N.Y. Nov.5, 2004) (the court denied *res judicata* when defendant let a second action proceed without objection), *recons. denied,* No. 02–7434, 2005 WL 1176072 (S.D.N.Y. May 19, 2005).

In the present case, unlike the Restatement (Second) example and the cases cited above, two actions were not being maintained by plaintiff at the same time, such that the government was unable to acquiesce in a second pending lawsuit even if it had wanted to do so. Instead, in the earlier litigation plaintiff decided to place all of its eggs in a single basket, the breach of contract basket, as an intentional strategy. Now, many years later, and after the breach of contract action was decided and upheld on appeal, plaintiff filed a second action, attempting to revive litigation and reconsider transactional facts already dealt with by the court in a final decision on the merits. Defendant has timely objected with its dispositive motion based on *res judicata*. The record does not reflect that the government either tacitly agreed to or acquiesced in PCL bringing more than one claim on the single set of transactional facts.

PCL had the opportunity to bring its breach claim and equitable adjustment claims together in a single action, but declined to do so. Under such circumstances, if PCL intended to preserve its equitable adjustment claims for litigation at some later time, it had an obligation to clearly manifest that intention and secure an express agreement for that strategy. The direction that there be an express agreement between the parties to allow claim splitting, as is called for by both the Restatement (Second) and case law, is well founded to avoid repetitive litigation and confusion. *See Urbanizadora Santa Clara v. United States,* 207 Ct.Cl. at 305, 518 F.2d at 578 ("If plaintiff intended to preserve and pursue [an additional claim] ... it was incumbent on plaintiff to manifest this intention in a clearly recognizable manner.") (citation omitted); *Pactiv Corp. v. Dow Chem. Co.,* 449 F.3d at 1231("[C]ourts have expressed willingness to honor an express agreement between the parties that an action on one part of the claim will not preclude a second action on another part of the same claim ...." (quoting 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4415, at 354 (2d ed.2002))).

*Reservation of Plaintiff's Claims by the Court in the First Action*

■ The plaintiff also argues that "the Court expressly reserved decision on PCL's claims for equitable adjustment," citing the Restatement (Second) of Judgments § 26(1)(b) by way of authority. The Restatement (Second) of Judgments provides:

> § 26. Exceptions to the General Rule Concerning Splitting
>
> (1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> * * *
>
> (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or ....

Restatement (Second) of Judgments § 26(1)(b). The United States Court of Appeals for the Federal Circuit has adopted Restatement (Second) of Judgments § 26(1)(b). *Indiana Michigan Power Co. v. United States,* 422 F.3d 1369, 1378 (Fed.Cir.), *reh'g denied* (Fed.Cir.2005); *see also Enter-*

*gy Nuclear Indian Point 2, LLC v. United States,* 64 Fed.Cl. 515, 525–26 (2005).

Plaintiff points to a sentence in footnote 48 of the court's breach decision in *PCL II,* commenting on the strength of evidence presented to the court, to argue that its CRX and delay claims were reserved. In footnote 48 the court stated:

> In other words, the testimony at trial of fact witnesses buttressed the analysis and conclusions of the defendant's expert report; however, the absolute conclusions are not adopted by the court and are reserved for any claim that PCL may elect to bring for a delay claim.

*PCL II,* 47 Fed.Cl. at 802, n. 48; *see also PCL III,* 53 Fed.Cl. at 491. Plaintiff argues that this language is "the exact type of express reservation contemplated by the *Restatement (Second) of Judgments ....*" Plaintiff, however, did not request the court to reserve delay claims for subsequent litigation and, specifically, indicated that it was not pursuing a delay claim at the time of the breach litigation. Consequently, the court did not reserve delay claims, and did not intend to split the litigation into breach litigation and subsequent delay litigation. Had plaintiff's counsel asked to reserve delay and CRX claims for subsequent litigation, the request would have been denied, because such claims arise from the same set of transactional facts as the breach claim and, for judicial efficiency and economy, should have been tried at the same time as the breach claim. The legal policy and concept underlying the *res judicata* doctrine were designed to avoid hearing the same witnesses and reviewing the same exhibits, in this case extensive, in two or more, separate actions. As is evident from the large witness and voluminous exhibit lists for the breach trial, such would clearly be the case if plaintiff's current case is allowed to go forward. Reserving delay claims for later litigation was not before the court. When the court raised alternatives to the breach theory with plaintiff's counsel, the latter stated that, "I don't want to say anything that encourages other than a breach of contract result here." Plaintiff's counsel did not ask to reserve delay claims and CRX claims because he delib-

erately chose a total breach strategy instead, which encompassed issues related to the CRX's and alleged delays.

Initially, the court notes that the words in the court's footnote 48 of *PCL II,* on which plaintiff relies, mention only a "delay claim," and not the CRX claims plaintiff is attempting to bring before the court in the present action. Without further debate, it is clear that plaintiff, therefore, cannot even try to rely on this language from footnote 48 to the opinion in *PCL II* as any basis for its allegation that the court expressly reserved the CRX claims plaintiff brings before the court in the present litigation. The CRX claims are not mentioned in the words of the opinion footnote plaintiff relies on. Therefore, there is no basis to assert that plaintiff's claims relating to the CRX claims were reserved.

Furthermore, the words plaintiff cites and relies on from *PCL II,* "that PCL may elect to bring for a delay claim," are less than an express reservation on the part of the court, and do not foreclose consideration of the doctrine of *res judicata* and potential dismissal of the claims on the ground that the delay claim is based on the same set of transactional facts as tried in the earlier breach claim. *PCL II,* 47 Fed.Cl. at 802, n. 48.

The language plaintiff chooses to focus on, taken from the middle of a long footnote in the second of three opinions previously issued by the court on PCL's claims, must be viewed in context. The complete language contained in footnote 48 of *PCL II* is as follows:

> The court does note that the significance of Mr. Caruso's report was its ability to cohesively tie together events in a manner that rebutted the plaintiff's [breach] case. There were flaws in the report that were demonstrated by the plaintiff, yet, there was ample evidence presented to suggest PCL had not suffered a delay or hindrance to the extent of a breach of contract at the hands of USBR. This conclusion was also established by the other USBR, and even PCL, fact witnesses in the case who were present on the site during construction. *In other words, the testimony at trial of fact witnesses buttressed the analysis and*

*conclusions of the defendant's expert report; however, the absolute conclusions are not adopted by the court and are reserved for any claim that PCL may elect to bring for a delay claim.* Moreover, Mr. Barba's testimony as an "independent expert" was of minimal impact and significance to the court, because of the relationship between Mr. Caruso and Mr. Barba and in part because the court did not elect to adopt in whole the findings of Mr. Caruso's report. PCL suggests that Mr. Caruso's "methodology" in performing his analysis did not measure "disruption" (that is, the effect of contract changes or delay upon work that did not affect project completion). However, even if PCL's criticisms are valid, PCL's records simply do not substantiate any appreciable amount of government-caused disruption because the plaintiff did not prepare a disruption analysis.

*PCL II,* 47 Fed.Cl. at 802 n. 48 (emphasis added). In retrospect, the above-quoted footnote 48 language may be less than optimal, but, in this footnote, the court was commenting on the quality of the evidence—the expert reports—and not intending to reserve delay claims for later litigation. This conclusion of non-reservation is borne out by the fact that, when the court, in fact, intended to reserve PCL claims, it did so in express language in the Conclusion section of the trial opinion.

In the Conclusion section of *PCL II,* the breach opinion, the court wrote:

> PCL alleges that there has been a complete breach of the contract by USBR and that USBR executed an illegal contract. The court has presided over a trial on plaintiff's breach of contract claim. PCL has alleged that the failures regarding the project are the responsibility of USBR, that the contract was illegally executed and that a breach of the contract occurred in a number of ways, each discussed above. The court holds that PCL has failed to demonstrate a breach of contract. The plaintiff also asked the court to set aside the government's termination for default. The court finds that the separable, uncompleted portion of the contract was subject

> to a proper termination for default. *Regarding the issues of liquidated damages and the amount retained by USBR, issues remain to be resolved now that plaintiff's breach claim has been resolved and the termination for default issues have been addressed. Further proceedings will be scheduled in a separate order.*

*PCL II,* 47 Fed.Cl. at 812 (emphasis added). Thus, the court expressly reserved the liquidated damages and retainage issues in *PCL II.* Those issues were decided in a separate, later opinion in *PCL III,* 53 Fed.Cl. at 493, in favor of PCL.

In *PCL III,* the court also expressly reserved an additional issue: "The final issue remaining in these cases is the defendant's counterclaim on the turntable issue, which the parties have indicated is close to settlement. Upon conclusion of those settlement efforts on the turntable issue, if those efforts are successful, judgment will be entered in both of the above numbered cases." *Id.* Subsequently, in an unpublished Order, dated December 19, 2002, the court noted that the settlement negotiations on defendant's counterclaim that PCL had defectively installed "an 83–foot revolving theater turntable" at the Hoover Dam Visitor Center, were successful, and that the parties had filed a stipulation of dismissal. Defendant's turntable counterclaim was dismissed in the Order, and final judgment issued.

The Restatement (Second) of Judgments recognizes certain situations in which a court may recognize a claim should be split, as follows:

> It may appear in the course of an action that the plaintiff is splitting a claim, but that there are special reasons that justify his doing so, and accordingly that the judgment in the action ought not to have the usual consequences of extinguishing the entire claim; rather the plaintiff should be left with an opportunity to litigate in a second action that part of the claim which he justifiably omitted from the first action. A determination by the court that its judgment is "without prejudice" (or words to that effect) to a second action on the omitted part of the claim, expressed in the judgment itself, or in the findings of fact,

conclusions of law, opinion, or similar record, unless reversed or set aside, should ordinarily be given effect in the second action.

Restatement (Second) of Judgments § 26(1)(b), cmt. b. First, this court finds no "special reasons that justify" plaintiff splitting its claims, in the above words of the Restatement (Second) regarding the claims generated by the PCL construction project at the Hoover Dam. The underlying transactional facts were the same in the breach claim tried by the court and, although specifically offered the opportunity to do so, plaintiff specifically declined to bring a delay or CRX claim in the lengthy trial proceedings which ensued in this case on the breach claim. Second, the court did not state that the breach judgment was "without prejudice" to a subsequent equitable adjustment claim. In contrast with the express reservation language on liquidated damages, retainage and the turntable claims contained in the Conclusion sections of *PCL II* and *PCL III*, there is no mention in the Conclusion sections of a reservation of delay or CRX claims.

In *Yapp v. Excel Corporation,* 186 F.3d 1222, 1228 (10th Cir.1999), the Circuit Court barred the claimant's second action based on claim preclusion. The claimant's first action was for unpaid overtime, and his second action was for wrongful discharge. *Id.* The court applied the "transactional approach" of the Restatement (Second) of Judgments, and concluded that both of the claims arose from the same employment relationship. *Id.* Kenneth Yapp argued that the court, nevertheless, had denied a motion by Excel Corporation to consolidate the two cases. *Id.* at 1228–29. Mr. Yapp had opposed the motion to consolidate. The Circuit Court rejected the argument that the second action under the facts presented was *"impliedly* reserve[d]" by the court. *Id.* at 1229. The court stated:

> Nevertheless, although Yapp realized and even acknowledged to Excel the risk of claim preclusion prior to settling the Overtime Action [the first action], he made no effort to have the district court revisit its interlocutory and discretionary order either to add language preserving his

Wrongful Discharge Action [the second action] or to unwind the maintenance of separate lawsuits. Instead, along with the risk of claim preclusion, Yapp took the $14,000 in settlement [for the first action].

*Id.* Mr. Yapp did not seek from the court an express reservation of his wrongful discharge and, similarly, PCL did not seek from this court an express reservation of either the delay or the CRX claims. Both Mr. Yapp and PCL accepted the risk of *res judicata,* with the result in both cases being claim preclusion. *See also Strickland v. City of Albuquerque,* 130 F.3d 1408, 1410–13, 1413 n. 5 (10th Cir.1997) (claimant filed a state action and a federal action arising out of his termination from employment for a positive drug test, with the latter action dismissed on grounds of *res judicata:* "Although the state district court acceded to counsel's request to disregard the constitutional arguments [Fourth Amendment unreasonable search], no showing has been made the court expressly reserved plaintiff's right to maintain the federal action."). Both Mr. Strickland and PCL took the risk that the second action would be dismissed for claim preclusion, because they did not obtain an express reservation from the court.

The plaintiff declined this court's invitation to certify delay claims and CRX claims and to consolidate those claims with its breach claim. Therefore, "[t]he court had no reason to consider whether such a lawsuit—in whatever forum, under whatever theories, and against whomever brought—would be subject to any particular defense, including an affirmative defense such as res judicata that is waived if not raised. It [the court] did not by its opinion excuse plaintiffs from the preclusive effects of any defense." *Brupbacher v. Raneri,* No. 00–1292–D, 2001 U.S. Dist. LEXIS 9266, at *10 (N.D. Tex. June 29, 2001) (footnote omitted); *compare Venuto v. Witco Corp.,* 117 F.3d 754, 760 (3d Cir.1997) (affirming the trial court's reservation of plaintiff's claim finding that it was clear that the trial judge "intended to permit [plaintiffs] to file their claims in a separate suit, as had been discussed at the argument on motion," and that this was "not an instance in which the court's use of the phrase 'without prejudice' was inadvertent."); *Centennial Ins. Co.*

v. Sharp, No. 98–0973, 1998 WL 575105, at *4–5, 1998 U.S. Dist. LEXIS 14218, at *14–15 (E.D.La.1998) (finding that the court reserved plaintiff's claim when the judge "indicated that he was aware" of a separately filed action, and "indicated his intent to allow Sharp to proceed....."). In PCL's present case, the breach complaint and the present action were not pending at the same time as in *Centennial*, and the phrase "without prejudice" was not employed, as it was in *Venuto*.

This court did not "expressly reserve" plaintiff's delay claims. Unlike the language PCL attempts to rely on, cases in which the court has been held to have reserved a second claim reflect express language. *See Sharp v.United States*, 82 Fed.Cl. 222, 229 (2008) (mindful of Restatement (Second) of Judgments § 26(1)(b) (1982), the court expressly provided that the "plaintiffs' rights to bring further actions to recover amounts improperly deducted after June 30, 2008" shall not be prejudiced); *Sys. Fuels, Inc. v. United States*, 79 Fed.Cl. 37, 74 (in the Conclusion section of its opinion, the court stated: "In accord with the *Restatement (Second) of Judgments* § 26(1)(b) and (e), plaintiffs shall retain the right to bring subsequent actions on claims for damages incurred after June 30, 2006"), *recons. denied*, 79 Fed.Cl. 182 (2007); *Entergy Nuclear Indian Point (ENIP) 2, LLC v. United States*, 64 Fed.Cl. at 526 (in the Conclusion section of the opinion, the court used express language to reserve future claims: "ENIP shall retain the right to bring claims for damages incurred after its most recent fiscal year prior to trial, in accordance with *Restatement (Second) Judgments* 26(1)(b) and (e)."); *Tennessee Valley Auth. v. United States*, 69 Fed.Cl. 515, 543 (2006) (the court included an express reservation in the Conclusion section of its opinion); *Tennessee Valley Auth. (TVA) v. United States*, 60 Fed.Cl. 665, 677 (Fed.Cl. 2004) (After a discussion of *res judicata*, the court noted that plaintiff TVA requested the court to issue "an order, pursuant to either [Restatement (Second) of Judgments] Paragraph 26(1)(b) or 26(1)(e), preserving TVA's right to maintain future actions," which the court did.).

PCL cites *Washington Public Power Supply System v. Pittsburgh–Des Moines Corporation*, 876 F.2d 690, 699 (9th Cir.1989), for the proposition that, "[w]hen a court reserves a question for further adjudication, a judgment does not bar subsequent determination of that question." In the present case, however, the delay and CRX claims had not been presented, and so could not have been and were not expressly reserved, as the court did in *Washington Public Power Supply System:* "The court reiterated its decision to reserve ruling on such collection matters," and the court "expressly reserved ruling several times on the collection issue." *Id.* at 699 n. 9 & 699. Moreover, in the PCL breach opinion, the liquidated damages, retainage and turntable claims were expressly reserved by the court; delay and CRX claims were not.

PCL also cites *Torres v. Rebarchak*, 814 F.2d 1219, 1225 (7th Cir.1987), for the proposition that "a court may dispose of a segment of litigation and render judgment thereon, while reserving the remaining issues for trial at a later time....." In *Torres*, the parties entered into a settlement agreement and consent judgment which provided that certain claims were dismissed with prejudice and other claims were dismissed "without prejudice." *Id.* at 1220. The Circuit Court agreed with Mr. Torres that "the judgment in the first action specifically reserves, by use of the words "without prejudice," the plaintiff's right to bring the second action." *Id.* at 1224. In the present case, PCL delay and CRX claims were not dismissed "without prejudice," preparatory for subsequent litigation.

PCL also cites to *Dodd v. Hood River County*, 59 F.3d 852, 862 (9th Cir.1995), for the proposition, in PCL's words, that "there is no claim preclusion where court reserved [an] issue for later determination." In *Dodd*, state and federal action were pending at the same time. *Id.* at 857. The Circuit Court did not bar the second claim based on *res judicata*, because the "Dodds expressly reserved the right to proceed in claims for violations of federal [C]onstitution protection in other litigation." *Id.* at 862. Furthermore, in *Dodd*, "the Oregon courts sufficiently reserved this issue by repeatedly acknowl-

edging that the Dodds' federal constitutional claims were not before them and were pending in the federal district court." *Id.* In the present case, PCL brought a breach of contract case and did not expressly reserve CRX or delay claims, nor were CRX or delay claims pending separately in this court or anywhere else in a second lawsuit at the same time as the breach case. These cases are distinguishable from the present case, and do not assist PCL. The court finds that PCL did not seek to reserve delay and CRX claims in the earlier litigation. Moreover, the language in footnote 48 of *PCL II* did not reserve for later litigation the delay or CRX claims, which plaintiff seeks now to bring in the instant follow-on litigation, filed following an exhaustive trial, a decision not in its favor by the trial court and affirmance on appeal.

### CONCLUSION

In conclusion, plaintiff is arguing that its strategic decision to bring only a breach claim, which involved the introduction of delay/CRX evidence, and to intentionally exclude independent delay/CRX theories of recovery, does not preclude plaintiff from bringing, at its discretion, years later the delay/CRX claims based on a different theory of recovery even if much of the same delay/CRX evidence would have to be reintroduced at the second trial. However, after approximately fifty days of trial testimony, the introduction of voluminous trial exhibits, extensive post-trial briefing and comprehensive trial and related opinions, plaintiff should not be allowed to do so. There was no impediment to plaintiff raising and litigating the matters now raised in the more recent Case No. 06–144C in the earlier complaint and trial. The doctrine of *res judicata* should not be so easily circumvented. For the foregoing reasons, the court grants defendant's motion for summary judgment, and dismisses plaintiff's complaint, with prejudice. The clerk's office is directed to enter judgment for the defendant in accordance with this decision.

**IT IS SO ORDERED.**